# WHITWORTH'S DISTRIBUTEES *vs.* OLIVER ET AL.

[BILL IN EQUITY BY DISTRIBUTEES TO COMPEL SETTLEMENT OF ADMINISTRATOR'S ACCOUNTS.]

1. *Virginia not alien enemy to Confederate States; judicial notice of public events.*—The recitals in the preamble to the act of the provisional congress of the Confederate States, approved May 6th, 1861, which first recognized the existence of the war between the United States and the Confederate States, and the known history of the times, of which the courts will take judicial notice, show that Virginia never was an alien enemy to the Confederate States.

2. *Liability of sureties on administrator's bond.*—Where the same person becomes a second time the administrator of a decedent's estate, moneys received by him during the first administration, and not shown to have been wasted or converted, are presumed to remain in his hands at the time of his second appointment, and the sureties on his second bond are responsible for them.

3. *Offices of administrator and probate judge not incompatible.*—The acceptance of the office of probate judge by an administrator does not work a vacancy in the administration, on the ground of incompatibility; administration being a trust, rather than an office.

4. *Respective duties of administrators in chief and de bonis non.*—Where an administrator in chief resigns, or is removed, or his office expires, before the administration is so far matured as to be ready for final settlement, it is his duty, under the provisions of the Code, (§§ 1718–19, 1876, 1878,) to account to the succeeding administrator *de bonis non* for all moneys in his hands, or collected by him, not paid out or duly expended; and it is equally the duty of the latter to collect such funds from the former.

5. *Extinguishment of debt by presumption of payment.*—Where a debtor becomes the administrator of the estate of his deceased creditor, the presumption of payment arises, and the debt is extinguished, without reference to his solvency or insolvency; but this principle does not apply, where a person who has been administrator in chief of a decedent's estate, but has never settled that administration, is afterwards appointed administrator *de bonis non*.

6. *Liability of sureties on administrator's second bond.*—Where an administrator in chief, whose office has expired before the administration is ready for a final settlement, is afterwards appointed administrator *de bonis non*, and fails to transfer to the second administration, within a reasonable time, assets received and not duly expended during the first, or to account for them if wasted or converted, the sureties on his second bond are responsible for his default.

APPEAL from the Chancery Court of Greene.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed, on the 2d February, 1861, by Joseph W. Gills, Elizabeth Ann Gills, his wife, and Mrs. Sarah Whitworth, against William C. Oliver, as the administrator of Henry Clay Whitworth, deceased, and the sureties on his official bond. It alleged, that the complainants resided in Virginia, and were the distributees and next of kin of said decedent, Mrs. Sarah Whitworth being his mother, and Mrs. Gills his sister; that the deceased died in Virginia, where he resided, in 1845, intestate, and under fourteen years of age; that by the statute laws of Virginia, his mother and sister, as his heirs-at-law and next of kin, were entitled to equal shares of his estate; that Oliver was appointed administrator of the estate of said decedent, by the probate court of Greene county, on the 28th December, 1854, and gave bond, with his co-defendants as sureties; "that he afterwards received, as such administrator, on the division of the estate of Christopher H. Whitworth, deceased, (who was the father of said Henry Clay Whitworth,) certain slaves, for the said Henry Clay Whitworth and Elizabeth Ann Gills"; that as such administrator, and as guardian for said Elizabeth Ann, he hired out these slaves for several years, and received the hires, but had never returned any account thereof to said probate court; that in 1852, "prior to his regular appointment as administrator as aforesaid," said Oliver was the sheriff of said county, and by virtue of that office was appointed administrator of said H. C. Whitworth, " and, while acting as such, received and collected moneys belonging to said estate"; that on the final settlement of the estate of said Christopher H. Whitworth, said Oliver, as administrator, would be entitled

to retain for the estate of said H. C. Whitworth about $2,347, for which he ought to account to the complainants; that said Oliver was elected probate judge of said county in 1856, and was holding that office when the bill was filed; and that he was insolvent. The prayer of the bill was for " an account of the receipts and disbursements of the said Oliver as administrator of the said H. C. Whitworth," and for a final settlement and distribution of the estate.

The defendants demurred to the bill, for want of equity, for multifariousness, and because the complainants appeared by it to be alien enemies. The chancellor sustained the demurrer, and dismissed the bill; and his decree is now assigned as error.

WM. P. WEBB, for appellants.
T. REAVIS, *contra*.

STONE, J.—The demurrer to the bill in this case, on the ground that when the bill was filed—February 2d, 1861—the complainants, who were residents of the State of Virginia, were alien enemies, and therefore incapable of maintaining an action in our courts, is not well taken. Without intending, at this time, to declare at what time the present war between the United States and the Confederate States had its beginning, we feel no hesitation in affirming that at no time has the commonwealth of Virginia been a party to the war against us; and hence we hold, that the unsupported fact, that the complainants were residents of Virginia, did not, at the time the bill in this case was filed, constitute them alien enemies.

The act of our provisional congress, which first recognized the existence of the present war, was approved May 6th, 1861.—Acts of Provisional Congress, 2d session, p. 22. In the preamble to that act is the following recital: " And whereas the State of Virginia has seceded from the Federal Union, and entered into a convention of alliance, offensive and defensive, with the Confederate States, and has adopted the provisional constitution of the said states." The preamble went further, and expressly excepted all the slave states and territories of the former United States,

Maryland, North Carolina, Tennessee, Kentucky, Arkansas, Missouri and Delaware, and the territories of Arizona and New Mexico, and the Indian Territory south of Kansas, from the state of hostility to us, which that act ascribed to the other states and territories composing the Federal Union. These facts, and the known history of the times, of which we take judicial cognizance, [see 1st Greenl. Ev. § 4,] demonstrate the truth of the proposition stated above, that at no time has the State of Virginia been a party to the war against the Confederate States.

[2.] The objection of multifariousness in the present bill is not well taken. The bill only seeks to bring Mr. Oliver to a settlement of his second administration of the estate of H. C. Whitworth; we mean, the one to which he was appointed in December, 1854, when, it is alleged, his co-defendants became his sureties. True, the bill alleges that certain moneys had come to the hands of Mr. Oliver during his first administration; and of those moneys the bill prays an account against the present defendants. There is nothing in the bill from which it can be inferred that those moneys had been wasted, or converted, during the first administration; nor, indeed, that they have ever been wasted or converted. From aught that appears in the bill, those sums of money remained in the hands of the administrator at the time of his second appointment, and passed to the second administration. In the absence of any averment to the contrary, we must presume they did. This being the case, the sureties on the second bond are clearly responsible for them.—*Phillips v. Brazeal*, 14 Ala. 746, 752; *Governor v. Robbins*, 7 Ala. 79, 82; *Townsend v. Everett*, 4 Ala. 607; *Moore v. County of Madison*, 38 Ala. 670; *Williams v. Harrison*, 19 Ala. 277, 284.

It is also objected that this bill cannot be maintained, because the administration of C. H. Whitworth (the elder) has not been settled; and that therefore the administration of H. C. Whitworth, who was a distributee in the estate of the former, has not been completed, and hence cannot be brought to a settlement. It is urged, also, that this bill is multifarious, because it joins in one and the same suit demands against Mr. Oliver growing out of each of the

administrations on the estates of the two Whitworths—father and son—while the sureties of Oliver, who are also sued, are not liable for the administration of the estate of the elder.

Without intending, at this place, to decide whether or not this objection is well taken, if the pleadings were so framed as to claim relief on this ground, we have no hesitation in declaring, that the bill does not bring this subject before us in such form that we can regard it for any purpose. The only averment of the bill bearing on this question is in the following language : "That the said Wm. C. Oliver, as the administrator of Christopher H. Whitworth, the father of the said Henry C., will have and be entitled, on the final settlement and distribution of the estate of the said Christopher H., to hold and retain for the estate of the said Henry C., his intestate, about $2,347, which ought to be accounted for by him as administrator of Henry C., and distributed between the complainants as his heirs-at-law and distributees aforesaid." This language, it will be observed, fails to inform us when Mr. Oliver became the administrator of Christopher H. Whitworth, and is silent on the question, whether the assets of that estate have ever come into his hands. It is only by inference that we can learn that the elder Whitworth died before the younger. Language so indefinite can not be the foundation of relief in equity ; and hence we regard it as an immaterial averment, which can not affect the result of this suit in any way. As bearing on this, and possibly on another feature of this case (not noticed in argument), see *Cockrell v. Gurley*, 26 Ala. 405. We regard this bill, in its present form, as simply an attempt to procure a settlement of Mr. Oliver's second administration of H. C. Whitworth's estate.

[3.] The chancellor ruled, that Mr. Oliver, by accepting the office of probate judge, had vacated his office as administrator ; that the two offices are incompatible ; and that, in such case, no proceedings could be instituted to bring Mr. Oliver to a settlement, until an administrator *de bonis non* should be appointed. We think, in thus holding, the distinguished chancellor erred. Administration is a trust, and is not an office, within the meaning of the rule invoked.—

1 Bouv. Law Dic., tit. *"administrator"; ib.* tit. *"incompatibility"; 2 ib.* tit. *"office* and *officer"; People v. Carrique,* 2 Hill, (N. Y.) 96; Ang. & Ames on Corporations, § 434; Hill on Trustees, 65; 7 Bouv. Bacon, 279, 313–14; 5 Com. Dig. 204.

|4.] It is probable that, when this case returns to the court below, it will become necessary to decide whether the sureties of Mr. Oliver, who are parties to this suit, are chargeable with the funds which came to his hands during the administration in chief, provided those funds were used, converted, or wasted by him, before his second appointment; in other words, whether it was his duty, as administrator *de bonis non,* to reduce to his possession the effects and assets which had come to his own hands as administrator in chief; and if so, being both debtor and creditor—that is, the right to demand and the obligation to pay being co-existent in him at one and the same time—whether the debt is extinguished by presumption of its payment.

This question is not free from difficulty. It was settled in this State, many years ago, that an administrator *de bonis non* could not compel the administrator in chief to pay to him the money which had come into his hands by virtue of the administration; but that a different rule prevailed as to property of the estate which remained in specie. For such property, the succeeding administrator may maintain an action.—See *Willis v. Willis,* 9 Ala. 721; *Price v. Simmons,* 13 Ala. 749; *Judge v. Price,* 6 Ala. 36. This disability gave rise to the acts of 1845 and 1846.—Pamph. Acts, 1844–5, p. 166; *ib.* 1845–6, p. 14.

In the cases of *Judge v. Price,* and *Willis v. Willis,* above cited, are expressions, not necessary to the decision of those cases, which are possibly subject to criticism. We allude to the statement, that "the authority of the administrator *de bonis non* extends only to such of the personalty of his estate as remains *in specie, unaltered or unconverted* by his predecessor, and so far only can he be regarded a trustee for distributees and creditors."—See, also, *Gould v. Hayes,* 19 Ala. 450, and authorities there cited. We do not, and will not, controvert the correctness of the real point decided in those cases—namely, that the administrator *de*

*bonis non*, in the absence of the statute of 1846, could maintain no action to recover from his predecessor any. of the effects of the estate, except such as remained "in specie, unaltered and unconverted by him." This point expressly arose in each of those cases ; the decision of it was necessary, and it was decided. *Stare decisis.* But, when the court went farther, and limited the *authority* of the succeeding administrator, as is shown in the above extract from *Willis v. Willis*, it becomes a question if it did not trench on other statutes of force in this State. It is conceivable, that the legislature may have given to an administrator *de bonis non* no action to recover from his predecessor money which the latter had received in administering the estate ; while a voluntary payment by the administrator in chief, to his successor, would exonerate himself and his sureties, and fasten a liability on his successor, to creditors and distributees. This seems to result from the act of 1821, (Clay's Dig. 222, § 9,) and the construction placed upon it in another well-considered opinion of this court.—See *Skinner v. Frierson*, 8 Ala. 915.

In *Bogle v. Bogle*, (23 Ala. 544,) it was held, that the administrator in chief discharged himself from liability, by paying over money in his hands to his successor; and this, anterior to, and independent of the act of 1846.—See, also, *Willis v. Willis*, 16 Ala. 659.

The act of 1821 clearly contemplates, that an administrator who has resigned, or been removed, may pay to his successor all "assets or effects which shall not have been duly administered or applied." The cases of *Skinner v. Frierson*, and *Bogle v. Bogle*, recognize the right of the resigned administrator to pay over such assets and effects, and thus discharge himself and his sureties from all further liabilities, including suits then pending against him. The substance of this clause of the act of 1821 has been carried into the Code, sections 1718, 1719.

But it is, perhaps, not necessary to pursue this investigation farther. The acts of 1845 and 1846 removed the disability under which the administrator *de bonis non* had previously labored, and allowed him to force his predecessor to a settlement, and to obtain a decree against him for the

money assets not fully administered. So, the Code, which governs this case, and the act of 1853-4, are more full and complete on the subject, than the act of 1846.—See Code, ch. 10, p. 365, §§ 1876 *et seq.*; Acts of 1853-4, p. 24.

Under the Code, (§§ 1718, 1719, 1876, 1878,) it is not only the privilege of the administrator in chief to pay over to his successor the assets and effects of the estate in his hands, not fully administered, but it is his duty; and if he fail to do so, it is both the privilege and the duty of the latter to compel him. From this the following propositions result : Where an administrator in chief resigns, or is removed, or his office expires, before the administration is so far matured as to be ready for final settlement, and an administrator *de bonis non* has been appointed, it is the duty of the administrator in chief to account to the administrator *de bonis non* for all moneys in his hands, or converted by him, not paid out or duly expended in the administration ; and it is equally the duty of the administrator *de bonis non* to collect such funds, thus held, from the resigned or removed administrator in chief.

[5.] In all cases of indebtedness from one in his individual capacity, to an estate of which he afterwards becomes executor or administrator, we have held that the doctrine of presumed payment arises ; or, in other words where the obligation to pay and the right to demand coexist, even for a moment, in the same person, the law presumes that the debt is paid, and will charge the administrator in his account with so much money assets actually received ; and this, without any reference to the solvency of the administrator.—See *Childress v. Childress*, 3 Ala. 752 ; *Hampton v. Shehan*, 7 Ala. 298 ; *Purdom v. Tipton*, 9 Ala. 914 ; *Whitlock v. Whitlock*, 25 Ala. 543 ; *Weems v. Bryan*, 21 Ala. 306 ; *Wankford v. Wankford*, 1 Salk. 299-306 ; *Kinney v. Ensign*, 18 Pick. 232 ; *Ipswick Man. Co. v. Story*, 15 Metc. 310 ; *Joyner v. Cooper*, 2 Bail. Eq. 199 ; *Teague v. Denley*, 2 McCord's Ch. 210 ; *Field v. Field*, 1 McMul. Eq. 369 ; *Vaughn v. Evans*, Hill's Ch. 428 ; *Duffee v. Buchanan*, 8 Ala. 27 ; *Bogle v. Bogle*, 23 Ala. 544.

In South Carolina, the doctrine has been carried much farther. In *Enicks v. Powell*, (2 Strob. Eq. 196,) it was

ruled, that where the same person was administrator in chief, and afterwards administrator *de bonis non*, if he committed a *devastavit* during the administration in chief, the law would presume, on his appointment as administrator *de bonis non*, that the liability on the first administration was transferred to the second; and the persons authorized to bring him to a settlement might proceed against the second administration and its sureties, for such sum, as so much assets in the hands of the administrator *de bonis non*. That case is not distinguishable from this.

Our statutes have restricted the powers of executors and administrators over property assets in their hands; and this has wrought, in one phase of the question, a modification of the doctrine of presumed payment, in cases where the same person becomes both debtor and creditor.—See *Kimball v. Moody*, 27 Ala. 137. But that modification has nothing to do with the present case.

We think there are reasons for a distinction between the present case and that of a person who fills the character of a common contract-debtor to an estate of which he afterwards became the administrator. The liabilities of an outgoing administrator are never fixed and certain; nor are they, generally, in such form as to be susceptible of reduction to a sum certain, without a settlement under the supervision and sanction of the court. At such settlement, the next of kin or legatees have the right to be present, that they may except to the account, appeal from the decree, &c. This doctrine of implied or presumed payment by an administrator in chief, to himself as his own successor, ignores all those provisions of the statute, as to filing accounts-current, setting a day for settlement, and bringing by notice the parties in adverse interest before the court; provisions which were wisely inserted to prevent error and injustice, and to protect the interests of persons not *sui juris*.—See Code, pp. 355 *et seq*.

Another probable effect of this doctrine of presumed payment, if applied to cases like the present, would be to relieve the sureties of the administration in chief from liability for *devastavits* committed during the term of their responsibility, and fasten the same on the sureties of the

administration *de bonis non;* an effect, not only repugnant
to our notions of justice and equity, but opposed to the
very name and theory of the trust, for the faithful execution
of which they have bound themselves—*the administration
of the effects left unadministered by the administrator in chief.*

This question is not distinguishable, in principle, from
that which was considered in the case of *Davis v. Davis,*
10 Ala. 300. The office of executor of the will, and that of
guardian to one of the legatees, were united in the same
person. On the settlement of the guardian, the question
arose, whether the share of the ward under the will was charge-
able in the account. This court said, "When the offices of exec-
utor and guardian are united in the same person, he holds the
estate in his hands as executor, and does not hold any thing
as guardian, which is not separated from the assets of the
estate, and placed to his account as guardian. To ascer-
tain the amount in his hands as executor, to which the
ward is entitled, it is obvious a settlement of his accounts,
as executor, would be necessary."—See, also, *Myers v.
Wade,* 6 Rand. 444; *Broaddus v. Rosson,* 3 Leigh, 12;
*Pratt v. Northan,* 5 Mason, 108; *Wallace v. Talliaferro,*
2 Call, 447; *Williamson v. Howard,* 2 Rob. (Va.) 39;
*Swope v. Chambers,* 2 Gratt. 319.

[6.] Another principle, however, may arise in this case.
The administration in chief had expired many years before
this bill was filed. By section 1874 of the Code, it is made
the duty of an executor or administrator, who is removed,
or resigns, or whose letters are revoked, or whose authority
ceases from any cause, to file his accounts, vouchers, &c.,
for a settlement, within one month thereafter. It was
equally the duty of the administrator *de bonis non,* if the
estate was not ready for final settlement, to possess himself
of the assets of the estate, in the hands of his predecessor,
within a reasonable time. What will be, in every case, a
reasonable time, we cannot positively affirm; (see *Williams
v. Harrison,* 19 Ala. 284;) but we do not hesitate to declare
that, in this case, there was ample time for Mr. Oliver,
under his second appointment, to possess himself of the
assets that were received by himself as administrator in
chief. For failing to do so, he fixed a liability on himself

and on his sureties as administrator *de bonis non,* which those interested in the estate may proceed on, if they elect to do so. In the case of *Morrow v. Peyton,* (8 Leigh, 54–74,) the court of appeals of Virginia laid down a rule, which we think eminently just and proper, as applicable to this feature of the case before us. One Morrow had been executor of the will of one Rutherford, and died, leaving the estate indebted to him on account of the administration. After the death of Morrow, the executor, Worthington and Cookus took out letters of adminstration on the estate of Morrow, and of administration *de bonis non* on the estate of Rutherford. Money assets of the estate of Rutherford came into their hands, sufficient in amount to pay said indebtedness ; but it did not appear that the funds had been, in fact, transferred from one estate to the other. The state of the accounts tended to show the contrary. One question made and considered was, whether the debt from the estate of Rutherford to the estate of Morrow should be presumed to be paid, and the liability transferred to the administrators of Morrow's estate. The court—President Tucker delivering the opinion—stated the question thus : " It is contended that, as the funds thus received by Worthington, of Rutherford's estate, were immediately applicable in his hands to the payment of the debt to Morrow, that application must be intended to have been made." This question he proceeds to discuss, and, for reasons entirely satisfactory to us, he decides it in the negative. He adds, however, and so ruled in the cause, that the administrator ought to have made the appropriation ; and that for omitting to do so, his sureties are responsible. In another place he stated, that the administrator and his sureties for the Morrow administration were responsible for not collecting the debt from the Rutherford estate. The principle is well stated in the head-note of the case, as follows :

" Where the estate of one decedent is indebted to that of another, and the same person is administrator of both, and wastes assets of the debtor estate, which he was bound, but has failed to pay over to the creditor estate, the sureties for his due administration of the creditor estate are liable for such default and *devastavit.*"—See, also, *Aylett v. King,* 11 Leigh, 486.

The principle announced above is substantially supported by the decisions of this court, which hold that, if an administrator fail, or neglect, to collect an available claim of the estate, he thereby charges himself and his sureties with the amount of the claim thus lost to the estate.—See *Duffee v. Buchanan*, 8 Ala. 27; *Milam v. Ragland*, 19 Ala. 88; *Hughes v. Mitchell, ib.* 268 ; also, *Willis v. Willis*, 16 Ala. 659.

We hold, then, that it was Mr. Oliver's duty to reduce the assets of the administration in chief—the estate being not fully administered—to his own possession as administrator *de bonis non;* and for failing to do so, the distributees may charge him and his sureties as administrator *de bonis non*, if they elect to do so. If Mr. Oliver's administration of the estate of C. H. Whitworth had so far progressed as to be ready for settlement and distribution, it was then his duty, as administrator, to settle that estate, and to pass the proper distributive shares over to the distributees. It was also his duty, as administrator of H. C. Whitworth, to reduce to his possession all the available assets of that estate. For neglecting to do so within a reasonable time, he and his sureties are, at the election of the distributees, liable as above indicated.

What we have declared above is independent of the inquiry, whether the assets were wasted or converted before the termination of the administration in chief ; or, whether Mr. Oliver was or was not solvent at that time. The law clothes him with the right and duty—the estate not being fully administered, and not being ready for settlement—of passing the liability from one administration to the other, whether he had retained the money on hand, or had previously wasted or converted the same.—See Code, § 1881; *Davis v. Davis*, 10 Ala. 300.

The decree of the chancellor is reversed, and the cause remanded.