# Modawell, Adm'r *v.* Hudson, Ex'r.

### Contest of Report of Insolvency.

1. *Amendment nunc pro tunc; what proper.*—The probate court, during the trial on contest of a report of insolvency, made by the administrator *de bonis non*, may correct *nunc pro tunc* the amount of indebtedness found against him on a former settlement as administrator in chief, if the matter becomes material, where the record furnishes proper basis for such correction.

2. *Payment; presumption of, when arises.*—Where on final settlement a balance is ascertained against the administrator in chief, who thereon resigns, but succeeds himself in the administration as administrator *de bonis non*, the presumption of payment arises; and he and the sureties upon the last administration bond, are, as regards creditors, liable for the amount of the decree, without regard to the solvency or insolvency of the principal and sureties upon the first bond.

APPEAL from Probate Court of Perry.

The appellant, Modawell, as administrator *de bonis non* of the estate of R. H. Hudson, deceased, reported said estate insolvent; and upon contest by A. G. Hudson, executor of Abner Hudson, who was a creditor, the court found the estate was solvent, and dismissed the report.

It appears from the bill of exceptions reserved by Modawell on the trial, that Modawell was appointed administrator some time in the year 1865. On the 19th day of December, 1870, he filed his accounts and vouchers for a final settlement, and on the 13th day of February, 1871, made a final settlement of his accounts and vouchers in the probate court, by which it was ascertained he was indebted to the estate in the sum of $2,997.12. On the same day, Modawell filed his resignation, which was received by the court and ordered filed. On the 15th day of February, 1871, Modawell applied for letters of administration *de bonis non* on said estate, and was appointed and qualified, giving bond with other sureties than those on the original bond. At the time, one of the sureties on the original bond had been declared bank-

(Modawell, Adm'r v. Hudson, Ex'r.]

rupt and received a discharge; the other had removed from the State, and was insolvent, as was Modawell, also; and there was no time after that, that Modawell, by the exercise of diligence, could have collected the decree out of the parties on the first bond.

Since Modawell's appointment as administrator *de bonis non* he had received only $926, and had expended for the estate the sum of $1,226. He testified that he was charged in the account settled in February, 1871, with amounts exceeding the balance of $2,997.12 found against him, as the proceeds of cotton belonging to the estate, which had been lost by the failure of a commission firm of which Modawell was a member, though not actively controlling its affairs.

At the time when the notice of contest was filed, the contesting creditor also filed a motion to correct *nunc pro tunc* the decree rendered on the settlement of February 13th, 1875, so as to charge said Modawell with the sum of $7,814.57. It appeared from an inspection of the accounts and vouchers filed by Modawell on that settlement, that this was the amount with which he was properly chargeable, and the lesser amount fixed in the decree of the 13th of February, 1871, was due to clerical misprisions of the administrator in not charging himself with certain items, and improperly crediting himself with others. Objection was made to the granting of the motion, on the ground that a creditor had no right to make the motion, and that it presented a new and distinct issue from that of the insolvency of the estate. The court overruled the objection, and amended the decree in accordance with the motion, and Modawell excepted.

There were exceptions reserved to various other rulings, to which further reference is unnecessary, as the estate was solvent, if the amount of the decree of the 13th of February, 1871, was assets in his hands, for which he and his sureties on the second administration bond were responsible.

The dismissal of the report of insolvency, and the amendment *nunc pro tunc*, are now assigned, among other things, for error.

WATTS & WATTS and W. B. MODAWELL, for appellant.

BAILEY & LOCKETT, *contra*.

STONE, J.—The Probate Court did not err in the correction *nunc pro tunc* of the decree rendered in the settle-

[Modawell, Adm'r v. Hudson, Ex'r.]

ment of the administration in chief. The records and papers in the cause, so far as we can learn, showed the error, and it was clearly the privilege, if not the duty of the Probate Court, to make the correction.—*Moore v. Lesueur*, 33 Ala. 237. The fact that that subject was taken up, and the correction made while the main trial was in progress, can not, without more, avail to set aside the judgment pronounced. We think it was permissible in the court to suspend the one trial, that it might consider the motion made to amend.

In the case of *Seawell, Adm'r of Buckley v. Buckley,* 54 Ala., Horace B. Buckley had died, and J. J. T. Wilson was appointed administrator in chief of his estate. He gave bond as such, with Wm. B. Seawell as one of his sureties. Wilson ceased to be administrator, and Seawell was then appointed administrator *de bonis non* of Buckley's estate. He brought his predecessor to a settlement of his administration, and a decree was therein rendered in his favor as administrator *de bonis non*, against Wilson, the administrator in chief. This decree was never in fact paid. When Seawell, the administrator *de bonis non*, was brought to a settlement, the question was whether he should be charged in his administration account with the amount of the decree against his predecessor. We then said: "The appellant was the surety, on the bond of Wilson, liable for his defaults. Whatever balance was due from Wilson when legally ascertained, became a debt due from appellant. That balance having been legally ascertained in a judicial proceeding to which appellant was a party, he became as liable for it as he would have been for a promissory note, or bond, executed by him to the intestate. He, alone, had the right to sue for and to receive satisfaction of the decree of the Court of Probate. It was rendered, and properly rendered, in his favor. As surety of Wilson, he became liable to pay it on its rendition. The right to demand and the obligation to pay co-existing in him, as to his *cestuis que trust*, those for whom he is bound to exercise the right to demand, and for whom he is bound to discharge the obligation to pay—the debt was extinguished. A presumption of its payment arises, because that was the duty resting on the appellant." And the court charged the second administration with the amount of the decree in its favor, against the first, as so much money actually received.

The present case is much stronger than the one from which we have copied. In that case the decree was in favor of Seawell, administrator *de bonis non*, against Wilson, admin-

[Blackman v. Dowling.]

istrator in chief.    An execution on that decree could have
been issued, levied on the property of Wilson, and the money
made, if he, Wilson, had property sufficient to meet the
demand.    Only in the event of a deficiency of Wilson's
property to liquidate the claim, would it have become neces-
sary to proceed against Seawell, or his effects, to force the
collection.    Only in that event could the right to demand,
and the obligation to pay, have co-existed in one and the
same person.    In the present case, the incompatibility is
encountered at the threshold.    The same person fills both
trusts—would be both plaintiff and defendant in any pro-
ceedings to enforce the collection—and hence not a step
could be taken in that direction.    If the presumption of
payment does not arise in such a case as this, the inevitable
result will be that the default of the administration in chief,
even though ascertained by a decree of the court, must
remain in abeyance, without any means of coercive redress,
so long as the administration *de bonis non* continues; and it
would require a second administration *de bonis non*, confided
to a different person, to force such administration in chief to
account.    To prevent just such result as this was the rule of
presumed payment established.    See the authorities collected
in *Whitworth v. Oliver*, 39 Ala. 293.

We think the Probate Court did not err in holding that
the amount of the corrected decree, against the administration
in chief, was assets in the hands of the administrator *de bonis
non*.    The result of such holding is that the estate was not
insolvent.

Decree of the Probate Court affirmed.