# Flinn *v.* Carter.

### The Settlement of a Guardianship.

1. *A covenant not to sue releases the debtor.*—A covenant by a creditor not to sue his debtor operates as a release.

2. *An error in the description of the decree does not invalidate the bond of indemnity.*—A bond of indemnity which recited that a decree had been rendered against a guardian and his sureties, when it had been rendered only against the guardian, is not void on this account. The error is immaterial.

3. *When a debtor becomes a trustee entitled to collect a debt, the presumption of its payment is conclusive.*—When a person is a debtor, and as administrator, or other trustee becomes the creditor entitled to receive payment of the debt, it will be conclusively presumed that he has paid himself. But when such a person is merely a surety, the presumption does not arise until the time of settlement.

4. *The nature of legal presumptions.*—Legal presumptions are, like legal fictions, to be adopted only to promote justice, not to defeat it, and the lawful acts and intentions of parties. And a surety upon a guardian's bond, who succeeds his principal as guardian, will not be presumed to have paid himself the amount of the decree against his predecessor, the moment he enters upon the duties of his office.

APPEAL from the Probate Court of Montgomery.
Tried before the Hon. C. W. BUCKLEY.
The facts are stated in the opinion.

D. S. TROY, for appellant.

WATTS & SONS, and RICE, JONES & WILEY, for appellee.
1. The appellant has no equity. The decree rendered in October, 1867, is conclusive against both Flinn and Thomas

R. Carter.—41 Ala. 203; 53 Ala. 615. The latter case is directly in point. The fact that Thomas R. Carter was insolvent at the time of the decree, although Flinn did not know of his insolvency, gives him no equity.—4 Ala. 693; 56 Ala. 393.

2. If Thomas R. Carter paid to his son part of what Flinn owed him as guardian, it was a good payment, and Flinn could have availed himself of it on his final settlement. As Flinn is made liable, by reason of being the surety of Thomas R. Carter, the former guardian, of course, a payment made to the ward, by the former guardian, was a discharge of Flinn's liability to that extent.—14 Ala. 419–47; 47 Ala. 257.

3. Let us concede that the decree of the Probate Court against Thomas R. Carter, as guardian, in favor of Flinn, was illegal, as is alleged by Flinn in his bill, then it is very clear that Flinn, as the succeeding guardian, when cited to settle his accounts, should have proved the invalidity of the said decree. But instead of doing so, he allowed a decree to be entered against him without using any diligence to protect himself It is upon this manifest negligence that he founds his title to relief from the decree against himself. Such negligence deprives him of the relief prayed for. " Nothing but conscience, good faith and *reasonable diligence* can call forth the court of equity into activity. Where these are wanting, this court is passive, and does nothing."—5 Ala. 90; 30 Ala. 270, and cases cited; 20 Ala. 826. The jurisdiction of courts of equity, in matters of administration, is as well settled as over guardians.—20 Ala. 676–677.

4. The bill fails to show whether the grounds for alleged credits occurred before or after the decree against Flinn in the Court of Probate. The intendment is against him. If these grounds occurred before that decree, he should have availed himself of them in the Probate Court.

MANNING, J.—Thomas R. Carter, father of appellee, William H. Carter, became in April, 1864, guardian of the latter and of his two other minor children,—giving a bond as guardian, upon which appellant, Bunberry Flinn, and Watson Flinn became his sureties. And on the same day, Carter, the guardian, filed an inventory setting forth that he had received from himself as administrator of some estates, $2,606 43-100 for his three wards, who were also his children. This sum he as guardian, received from himself as administrator in the currency of the late Confederate States ;. twenty dollars of which was then, equal to only one dollar in coin.

[Flinn v. Carter.]

In July, 1867, Thomas R. Carter made application to the Probate Court to settle finally his guardianship for his wards,—who were still minors; to which end proceedings were instituted by him. In October following, the court accepted his resignation of the guardianship, and Bunberry Flinn (the appellant) was at the same time appointed and gave bond as guardian of the same wards,—Thomas R. Carter, becoming a surety on his bond; and on the same day, decrees were rendered upon Thomas R. Carter's statement of his indebtedness to his wards against him, for the whole amount of the Confederate currency as so much good money, with compound interest thereon; each of the three decrees, being for the sum of $1,056 6–100 recovered in the names of the wards, respectively, by Bunberry Flinn, their guardian. Flinn as surety for Carter, thus became liable for the amounts of these decrees. But as guardian he never, in fact, received any of this money.

In 1876, appellee, Wm. H. Carter, who had become of age several years before filed his petition praying that Flinn be brought to a settlement of his guardianship, and charged with the amount of the decree rendered as aforesaid in favor of petitioner with compound interest thereon. There was no other estate of the ward than this to be accounted for. Flinn among other defences, set up as a release or bar a bond executed in March, 1873, by Thomas R. Carter, his wife Mary J. Carter, the said William H. Carter, and one Callaway, who had married one of the other wards, by which instrument, and in consideration of Flinn's becoming surety for Callaway, (son-in-law of two, and brother-in-law of the other of the Carters,) upon his four promissory notes for $2,000 each, payable in one to four years, successively, to Josiah Morris, the obligors bound themselves to hold Bunberry and W. Flinn "harmless and free from all liability whatever by reason of their suretyship on said guardian's bond, and by reason of said judgments rendered against them." The bond here referred to is that for Thomas R. Carter's guardianship; and the judgments are the decrees above mentioned; all of which are particularly mentioned in the bond of the Carters and Callaway.

1. A covenant by a creditor not to sue his debtor shall operate as a release. "And this construction has been made to avoid circuity of action; for if in such a case, the party should contrary to his covenant, sue, the other party would recover precisely the same damages which he sustained by the other's suing."—8 Bac. Abr. (by Bouv.) 248: "Release

[Flinn v. Carter.]

A." Upon the dissolution of a partnership, one partner, A took the obligation of the other, B, which C, a creditor of the firm also executed as surety for B, to pay all the debts of the partnership, (whereby A was of course to be kept harmless.) It was held that this operated as a release of A from a demand of C's against the firm.—*McNeal v. Blackburn*, 7 Dana (Ky.) 170.

The case in hand is very much like the one cited. By the bond of the Carters and Callaway, they bind themselves to hold Flinn harmless by reason of his suretyship on Carter's bond as guardian, " and by reason of said judgments," one of which is in favor of Wm. H. Carter, who also executed the bond set up in bar. This bond may therefore be insisted on as a release, unless some of the other objections made to it be valid.

2. The becoming bound as surety for Callaway, upon his notes for $8,000, to Morris, and enabling Callaway to purchase and obtain a large tract of land constitute a sufficient consideration on the part of Flinn, for the bond to hold him harmless. There was benefit to Callaway, and the detriment to Flinn of assuming the contingent duty of paying a large sum of money.

3. The bond in question specifically mentions the guardianship bond of Thos. R. Carter, by date, amount and names of obligors, including Bunberry Flinn and W. Flinn, and the date, and names of plaintiffs, and amounts of the decrees of the Probate Court in favor of the wards, respectively against their former guardian, describing them as "rendered against the said Thos. R. Carter, as such guardian by said court, and against his sureties as such." The writer of the bond was doubtless led to describe the judgment as against the sureties also, because the law provided that upon decrees or judgments against guardians, " executions may issue against them and their sureties upon their bonds."—Revised Code, § 2450 (2040). The objection that the bond in question is void or ineffectual because of that immaterial error in description, can not be sustained.

4. The argument that the appellant, Flinn, is chargeable with having in fact and before the bond to him was executed, received payment of the decrees or of a large part of them, from Thos. R. Carter, is not supported by the evidence; and the bond recites, (what nobody was better qualified than the obligors, to certify,) that "said judgments are yet unsatisfied."

5. It is ingeniously insisted that the bond of the Carters

and Callaway stipulated to hold Flinn harmless, only from what he was liable for by reason of his suretyship for the elder Carter and from the decree against the latter, his principal, and not from what he owed *as guardian;* and that by presumption of law, Flinn upon becoming guardian and upon the rendition, on the same day, of the decree, then paid the amount of the decree to himself; and that having thus received *it as guardian,* he was not discharged.

It is true that in certain cases where a party is a debtor or responsible for a debt, and in the capacity of administrator, or otherwise, in trust for others, becomes the creditor to whom payment of the debt is to be made, it will be conclusively presumed when he is brought to a settlement, that he has received payment from himself. The fact may be, though, as the courts well know, that such payment has not been made: and the parties are free to deal with each other in the meantime, according to the real fact. And where another is the principal debtor, and the person who as administrator, or in some other capacity becomes entitled to receive payment of the debt, is only a surety, he has the right as such administrator, or in such other capacity, to collect it from the principal: and no presumption that he has paid it to himself will make void his arrangements to that end with the parties concerned.

Legal presumptions should, like legal fictions, be adopted only to promote justice not to defeat it, and not to defeat the lawful acts and intentions of parties who are *sui juris.* The bond executed to Flinn would by such reasoning, be made of no effect; and the argument is founded on an erroneous assumption. Flinn was not bound to pay himself the amount of the decree in question, the moment he became guardian and the decree was rendered. He had a right at any time during the guardianship, to make the amount out of Thos. R. Carter the former guardian and his principal, he himself being chargeable with it only upon settlement. And since before settlement was required, and when the decree was wholly unsatisfied, the party to whom it was due, with a knowledge of all the facts, released Flinn, the courts will not in order to defeat the release, presume that to have been done which was not done, and which the parties, in the instrument operating as a release, say was not done.

It is unnecessary to decide any other of the questions that were discussed by counsel.

The judgment of the Probate Court of Montgomery county in this cause must be reversed and set aside; and this court

proceeding to render the judgment which that court should have rendered, it must be further adjudged and decreed that said Bunberry Flinn has been and is released of and from all liability on account of his guardianship of the said William H. Carter, to said Carter, and that said Flinn be forever discharged and exonerated from all liability to said Carter on account thereof, and recover of said William H. Carter the costs of this cause in this court and in the Probate Court.