# Knight *v.* Haynie.

*Final Settlement of Executor's Accounts.*

1. *Liability of executors for acts of each other.*—When executors act separately, and do not become bound for each other by the execution of a joint bond, each has an equal right to receive the assets of the estate, whether money, or any other kind of chattels; and one is not responsible for a *devastavit* committed by the other, unless he has in some way contributed thereto, or has made himself liable by his gross negligence.

2. *Same.*—An executor who is merely passive, by not obstructing his co-executor in receiving the assets, and who does not himself concur in the application of them, is not responsible for them; but, when one receives assets, and pays them over, voluntarily and unnecessarily, to his co-executor, by whom they are embezzled or lost, he who so paid them over is answerable with the other, unless he can show a sufficient excuse; and in the case of several executors, who by agreement divide the claims

[Knight v. Haynie.]

of the estate among themselves for collection, each returning a separate inventory, each is liable for the whole, because the receipts of each are pursuant to the agreement between them.

3. *Duty and liability of executor who is also administrator of debtor's estate.*—When an executor becomes also the administrator of the estate of a deceased debtor to his testator, and receives assets sufficient to pay the debt, both estates being solvent, it is his duty at once to make the application; and he is not discharged from liability by paying it over to his co-executor, pursuant to an agreement between them for dividing the collection of the assets, particularly when the habits, health, and pecuniary circumstances of such co-executor should have awakened inquiry on his part.

APPEAL from the Probate Court of Mobile.

Tried before the Hon. PRICE WILLIAMS, Jr.

In the matter of the final settlement of the accounts of Thomas A. Knight, as one of the executors of the last will and testament of Monroe P. Watts, deceased, after his resignation. The only matter assigned as error is the ruling and decree of the Probate Court in charging said executor with $2,800, part of a sum of $5,000 which he had paid over to his co-executor, J. P. Routon, since deceased, who failed to account for it, and died insolvent. The material facts of the case, as shown by the evidence set out in the bill of exceptions, are stated in the opinion of the court.

WATTS & SON, and OVERALL & BESTOR, for appellant, cited *Williams v. Harrison*, 19 Ala. 277; *Turner v. Wilkins*, 56 Ala. 173; *Peter v. Beverly*, 10 Peters, 532; *Edmonds v. Crenshaw*, 14 Peters, 166; *Jones v. Jones*, 42 Ala. 218; *Stell's appeal*, 10 Penn. St. 153; *Boyd v. Boyd*, 1 Watts, 367; *Ochiltree v. Wright*, 1 Dev. & Bat. 336; *Williams v. Wiggins*, 1 Ired. Eq. 92; *Sutherland v. Brush*, 7 Johns. Ch. 22; *Brazier v. Clarke*, 5 Pick. 96; *Gates v. Whetstone*, 8 So. Car. 244; *Knox v. Pickett*, 4 Dess. 92; *Hall v. Carter*, 8 Geo. 388; *Lenoir v. Winn*, 4 Dess. 65; *McNair's appeal*, 4 Rawle, 147; *Richardson v. Richardson*, 9 Penn. St. 431; *Verner's appeal*, 6 Watts, 253; *Bacon v. Bacon*, 5 Vesey, 331; *Clarke v. Blount*, 2 Dev. Eq. 51; *Gaultney v. Nolan*, 33 Miss. 569; *State v. Belén*, 5 Harr. 400; *Ray v. Doughty*, 4 Blackf. 115; *Davis v. Spurling*, 1 Russ. & My. 66; *Boyd v. Boyd*, 3 Gratt. 113; 2 Lomax on Executors, 490, sec. 22; 2 Williams on Executors, 1648–50, notes.

HERNDON, CROOM & LEWIS, *contra*, cited 2 Williams on Executors, ed. 1859, pp. 1650, 1927–8, 1932; *Edmonds v. Crenshaw*, 14 Peters, 166; *Stewart v. Connor*, 4 Ala. 814; *Monell v. Monell*, 5 Johns. Ch. 283; 2 Barb. Ch. 151; 1 Wendell, 583; 9 Cowen, 734; *Purdom v. Tipton*, 9 Ala. 914; *Modawell v. Hudson*, 57 Ala. 75; *Miller v. Irby*, 63 Ala. 484.

STONE, J.—Monroe P. Watts died, leaving a will, and therein appointed three executors, Wragg, Routon, and Knight, and relieved them from giving bond as such executors. The estate was considerable. Each executor qualified on the same day, but by separate letters of appointment. The estate consisted largely of what in mercantile phrase are called "bills receivable." Among the dues was a demand on one Yeldell, of about five thousand dollars. The three executors, by agreement among themselves, divided the assets, each taking a part. Wragg took much the larger share, and, among others, the claim on Yeldell. Each executor returned a separate inventory, the claim on Yeldell being in Wragg's. Wragg, it appears, was active in administration; and in a relatively short time he had realized sufficient moneys to pay off the debts of the estate, which he did, and left a surplus of money in his hands. Yeldell, in the meantime, had died, and the claim on him had not been collected. His estate was solvent, but it required a sale of his lands, or a part of them, to pay his debts.

Wragg resigned his executorship, and came to a settlement, the correctness of which is not questioned in this proceeding. For the money balance in his hands, a decree was rendered in favor of the continuing executors, Routon and Knight. Routon alone attended the settlement, and the moneyed decree, together with the unadministered assets in Wragg's hands, were turned over to him, Routon. Among these was included the Yeldell note. Routon then placed this note in the hands of an attorney, and had it reduced to judgment in favor of himself and Knight, as continuing executors, and against the personal representatives of Yeldell. After this, Knight became one of the administrators of Yeldell's estate, and under a petition by him, together with his co-administrators, the lands of the latter estate were sold, to pay the Watts and, possibly, other debts. Knight appears to have been the most active of the Yeldell administrators. The money for the Yeldell lands, it would seem, was not all paid at once, probably in accordance with the terms of sale. This, we think, is shown by the fact, that the money collected for the Yeldell estate was applied to the Watts indebtedness at different times, and in different amounts; the dates ranging from November 18th, 1875, to January 26th, 1877. The whole amount applied within these dates was five thousand dollars, as follows: Nov. 18th, 1875, $2,000; Nov. 20th, 1875, $500; Jan. 9th, 1877, $730; Jan. 26th, 1877, $1,770. In form, these several payments were made by Knight, administrator of Yeldell, to Routon, executor of Watts. Routon died in the spring of 1877, wholly insolvent, but having previously paid twenty-two hundred of the five thousand dollars, on legacies bequeathed under Watts' will. The question raised by

the record is, whether Knight shall be held to account for the residue of the five thousand dollars—twenty-eight hundred dollars. The Probate Court decreed that he should.

It is contended for appellant, that Knight received and held the money as the administrator of Yeldell, and never as the executor of Watts; that it never became the property of the estate of Watts, until it passed from the hands of Knight to the hands of Routon. The argument goes farther, and claims that the ownership of the money could not change, until Routon received it, because he, Routon, was charged with the collection of this particular claim. If this postulate can be maintained, as the legal result of the facts, then the conclusion contended for would seem to follow. When executors act separately, and do not become bound for each other by the execution of a joint bond, each has the equal right to receive the assets of the estate, whether money, or any other species of chattels; and for a *devastavit* by one, the other is not responsible, unless he has, in some way, contributed thereto, or has made himself liable by his gross negligence.—*Turner v. Wilkins*, 56 Ala. 173; *Williams v. Harrison*, 19 Ala. 277; *Stell's appeal*, 10 Penn. St. 149; *Boyd v. Boyd*, 1 Watts, 365; *Brazier v. Clark*, 5 Pick. 96; *Lenoir v. Winn*, 4 Dess. 65; *Boyd v. Boyd*, 3 Gratt. 113.

But we think the facts of this case do not justify the application of the principle stated above. Knight was the personal representative of each estate, and both estates were solvent. He had independent, complete power to receive the moneys due to each estate, and to disburse them in due course of administration; and when he had in his hands moneys belonging to the debtor estate, it was his duty to apply them towards the extinguishment of the undisputed claim of the creditor estate. *Whitworth v. Whitworth*, 39 Ala. 286; *Seawell v. Buckley*, 54 Ala. 592; *Modawell v. Hudson*, 57 Ala. 75; *Miller v. Irby*, 63 Ala. 477; *Flinn v. Carter*, 59 Ala. 364; *Lee v. Lee*, 67 Ala. 406. In such a case as this, our rulings give the creditor, or beneficiary, the option of proceeding in either right, against a debtor filling a dual relation; that is, for money received, because the demand is presumptively collected; or for culpable *laches*, in failing to apply, and thus collect, when he could and should have done so.— *Whitworth v. Whitworth*, and *Flinn v. Carter, supra*.

We can not assent to the proposition, that under the facts of this case, Routon was, any more than Knight, charged with the duty and power of collecting the Yeldell debt. It was as much the duty of the one as the other. We go farther. When Knight had the moneys of the Yeldell estate, and resolved to apply them to the Watts claim, it was, at the option of the beneficiaries, as much a payment, as it became when he actually

35

[McCarthy v. McCarthy.]

handed the money to Routon. He, therefore, contributed actively in placing the money out of the rightful, lawful custody of himself, into Routon's custody; and that, too, when Routon's habits, health, and pecuniary circumstances should, at least, have awakened inquiry.

We approve and adopt the following language, which, without material change, we find in the text of both Williams and Lomax, in their works on Executors; Williams, 5th Amer. ed., vol. 2, p. 1651; 2 Lomax, marg. p. 298: "An executor who is merely passive, by not obstructing his co-executor in receiving the assets, and who does not himself concur in the application of them, is not, it seems, answerable. But, where one executor receives the whole or a part of the testator's estate, and pays it over voluntarily and unnecessarily to his co-executor, and the same is embezzled or lost, he who so paid it over is answerable with the other, unless he can assign a sufficient excuse. Thus, in the case of several executors, if, by agreement among themselves, one is to receive and intermeddle with such a part of the estate, and another with such a part, each of them will be chargeable for the whole, because the receipts of each are pursuant to the agreement made between them."—*Peter v. Beverly*, 10 Pet. 532; *Edmonds v. Crenshaw*, 14 Pet. 166; *Monell v. Monell*, 5 John. Ch. 283; *Williams v. Maitland*, 1 Ired. Eq. 92; *Gates v. Whetstone*, 8 So. Car. 244; *Sutherland v. Brush*, 7 Johns. Ch. 17; *Hall v. Carter*, 8 Ga. 388; *Gaultney v. Nolan*, 33 Miss. 569; *Ray v. Doughty*, 4 Blackf. 115.

The cases of *Bacon v. Bacon*, 5 Ves. 331, and *Davis v. Spurling*, 1 Russ. & Myl. 64, rest on their peculiar facts, and are no authority against these views. *McGregor v. McGregor*, 35 N. Y. 218, is scarcely reconcilable with our rulings; and *The State v. Belin*, 5 Harr. 400, is too meagerly reported to shed any light on the question. The case of *Verner's estate*, 6 Watts, 250, we decline to follow; and *McNair's appeal*, 4 Rawle, 148, we need not consider.

The decree of the Probate Court is affirmed.