## JENKINS' DISTRIBUTEES *vs.* JENKINS' ADM'RS.

1. Where, on the application of an administrator for final settlement, the court orders publication " for three consecutive times," &c., and the decree recites that it was so made, it cannot be intended that publication was made for *three consecutive weeks,* as required by the statute, and the decree is consequently erroneous.

2. A guardian *ad litem* for infant distributees should be appointed a sufficient length of time before the day of final settlement to enable him to examine the accounts filed by the administrator; and the record should not only show the appointment, but his acceptance of the trust, —otherwise the decree will be reversed.

Error to the Orphans' Court of Benton. Tried before the Hon. Jas. L. Lewis, Judge.

This was a proceeding for the final settlement by the defendants in error of their administration of the estate of Owen Jenkins, deceased. At the time the order of publication was passed, James Crow was appointed guardian *ad litem* for the infant distributees, but it does not appear that he was notified of the appointment or ever accepted it, and on the day of the final settlement another appears to have been appointed in his stead. The remaining facts necessary to a full understanding of the case will be found incorporated in the opinion of the Court.

Rice, for plaintiffs in error, cited The Legatees of Horn v. Grayson, 7 Port. 270; Douthitt v. Douthitt, 1 Ala. Rep. 594; Taylor & Wife v. Reese, 4 ib. 121.

J. B. Martin, for the defendants.

DARGAN, C. J.—There are many objections made to the regularity of this decree, but we shall examine only two.— The first is, whether the publication that was ordered and shown to have been made was sufficient. The act of 1843, under which the proceedings were had, makes it the duty of the Orphans' Court, when an executor, administrator or guardian files his accounts for settlement, to order publication to be made for at least forty days, either by posting up written notices at the door of the court-house and at three or more other public places in the county, or by advertisement for three consecutive weeks in some newspaper, as the judge shall direct. —Clay's Dig. 229. On the day the accounts were filed in this case and application for a final settlement was made, the judge made an order, "that the first Friday in July then next be set for hearing the application, examining the accounts, and making the final settlement, and that publication be made in the Jacksonville Republican for *three consecutive times*, and at least forty days previous to the day appointed for the final settlement." The recitals in the final decree show that notice had been given in the Jacksonville Republican for *three consecutive times*, at least forty days previous to the day of settlement. The notice required by the order and the notice given was publication in the Jacksonville Republican for three *consecutive times;* but the notice required by the statute to be given, when it is published in a newspaper, is *publication for three consecutive weeks.* We cannot hold this to be a legal notice. We cannot say that publication for *three consecutive times* means publication for *three consecutive weeks.* If we could presume that the Jacksonville Republican means a newspaper by that name, we know not how often it is published, nor do we know whether publication was made for three consecutive weeks from the language employed to describe the publication that was given. As the record does not inform us whether the notice to the parties in interest was given in the manner directed by the act, we are compelled to hold the decree erroneous.—Willis, adm'r, v. Willis' Distributees, decided at the present term.

By the act before referred to, it is made the duty of the Orphans' Court to appoint guardians *ad litem*, if there be minor distributees, in order to protect their rights. *When* the guar-

dians shall be appointed, however, is not prescribed by the statute. We think the correct practice would be to appoint the guardian *ad litem* a sufficient time before the day of final settlement to enable him to examine into the accounts filed by the administrator. As the act was passed by the Legislature, no doubt, under the impression that the interests of the minors required that some one should be appointed to supervise on their part the accounts of the administrator, the courts should not adopt a practice that would render the act nugatory. To appoint a guardian *ad litem*, therefore, on the day of the final settlement, and then require him to proceed immediately with it, would be improper. Perhaps it would be the better practice to appoint the guardian *ad litem* at the time of ordering publication to be made. It must, however, be left to the discretion and judgment of the Orphans' Court, when the appointment shall be made and who shall be appointed guardian *ad litem*, but that discretion should be so exercised as to afford all the protection to the interest of the minors designed to be given by the act. The appointment of Crow as guardian in this case was certainly made in due time, but whether he ever accepted the trust, assented to the appointment, or was even notified of it, is not shown by the record. The record should not only show the appointment of a guardian *ad litem*, but also that he accepted the office. If we could not gather from the record that the guardian accepted the office, or undertook to perform the duties incident to the appointment, we should feel it our duty to reverse the decree.—Daniel v. Hannagan, 5 J. J. Marshall, 49.

The decree must be reversed, and the cause remanded.