# Otis, Administrator, *et al.* v. Dargan.

### *Bill for Review of Settlement in Probate Court.*

1. *Review of settlement in probate court under § 2774 R. C.; what essential to.*—It is indispensable to the maintenance of a bill, under § 2774 of Revised Code, to review a final settlement of administration in the court of probate, that the complainant should acquit himself of fault or neglect, whether the error complained of appears on the face of the record or depends on extrinsic evidence.

2. *Same; allegation of facts relied on; how alleged.*—General averments of error, or that complainant was without fault, and used due diligence, will not suffice. The error of law or fact must be clearly and pointedly alleged, and the fraud, mistake, or other facts relied on to acquit of fault or neglect, must be fully and explicitly stated.

3. *Notice by publication; effect of.*—Where notice by publication is the only mode by which a court is authorized to give notice of proceedings had before it, and due publication is made in the manner prescribed by law, such notice is as obligatory and binding upon parties affected by the proceeding, as personal service in a court of law, and is full legal notice to them.

4. *Negligence; what must be shown to acquit of.*—A mere general denial of knowledge of a party's right, will not suffice to relieve him of negligence in not prosecuting them, when it appears that facts were known to him which would have put a man of ordinary prudence on inquiry, by which such rights would have been ascertained.

5. *Review of settlement in probate court; what bar to.*—A decree rendered

[Otis v. Dargan.]

on final settlement of an administration in the court of probate, after due publication of notice, in the manner required by law, bars all right to a bill for review, unless the parties complaining of error show that the failure to avoid or correct the error, in that court, occurred without any fault or neglect on their part.

APPEAL from Chancery Court of Mobile.

Heard before Hon. ADAM C. FELDER.

Appellants filed this bill on the 6th day of February, 1872, for the purpose of opening and correcting a final settlement made by appellee Dargan, as executor of R. A. Heirn, deceased, in the probate court of Mobile on the 16th of March, 1870.

The original and amended bills show that on the 29th April, 1867, Roger A. Heirn died in the city of Mobile, possessed of a large estate, real and personal, which he devised by his last will and testament. After a special legacy of certain net rents, and the payment of all debts and funeral expenses, "all the balance" of the estate, both real and personal, of said testator, was left generally to testator's two sisters, Claudine and Sarah, for life, and at their death, in fee to two nieces and a nephew, Cornelia, Eliza and Charles, who are complainants with Otis as administrator *de bonis non* with the will annexed.

At the time of the testator's death he was a member of the firm of Heirn & Haydon, then engaged in the livery business, and also of the firm of Foster & Heirn, who were then engaged in the running of certain steamboats. The will provided that the appellee Dargan, who was appointed the executor, should continue the business with Haydon under the same terms as the testator had done. In May, 1867, the defendant proved the will and began the administration of the trust, and so continued until January, 1870, when he resigned. On the 16th of March, 1870, and after full legal notice had been given, he filed in the probate court his accounts and vouchers, turned over to his successor all the assets unadministered, and a final decree was rendered discharging him from all liability on account of this estate. At this time Claudine, one of the tenants for life, qualified as administratrix and so continued until the month of May, 1870, when she died; at her death the surviving tenant for life continued the administration until July, 1871, when she died. In November, 1871, the appellant Otis became the administrator *de bonis non*, &c., and on the 6th of February, 1872, he, in connection with the remaindermen, filed this bill. In the view which this court took of the case, it is unnecessary to refer particularly to the voluminous mass of evi-

[Otis *v.* Dargan.]

dence submitted by the parties, nor to notice specifically the various charges of fraud, maladministration, and error, in which the bill abounds.

The bill states that the complainants, Charles and Eliza, are residents of Pass Christian, in the State of Mississippi, and Cornelia resides at Ransay, Isle of Mann, Great Britain.

After charging fraud and maladministration of the testator's estate by the appellee, particularly in the settlement of the partnership affairs, and averring various errors of law and fact, the bill and amended bill thus refer to the final settlement: "That at the time said final settlement was made by said executor, the said parties, who now own the estate, knew that their said aunts were residing in said city of Mobile, but said Charles, Cornelia and Eliza Heirn had no notice or knowledge of said final settlement, and the said Cornelia did not know at that time, and until a short time before the filing of the bill, that she had any interest in the estate, or the administration of the same by the defendant, and the said Charles and Eliza Heirn reposing the utmost confidence in said executor, they, as well as their said aunts then in life, left the whole matter to said executor's management, trusting everything to his skill and integrity, feeling and believing that he knew much more about the matters pertaining to said estate than they did, and well knowing that he had all the information about the matter that was needed to a proper administration of the estate, and so they relied solely upon him, as he well knew, in the matter, and after said settlement was made, for a long time and until after the death of said devisees having a life estate. When the present devisees became entitled to said estate it became necessary to look into said settlement to see the condition of said estate, it was discovered for the first time that said estate had been so managed as to suffer great waste and loss by reason of the conduct of said executor; that said account for final settlement contained on its face numerous errors against the interest of said estate."

Then followed a specification of the items wherein the account was incorrect.

The respondent put in an answer denying all the charges of fraud, &c., contained in the bill; asserting that his account was correct, with the exception of a very small item of money which was overlooked, but which he offers to pay, notwithstanding his final settlement. He pleaded his final settlement in bar of the relief sought, and demurred, substantially, on the ground that the bill showed that the complainants were at fault, and guilty of negligence in not appearing at

VOL. LIII.

[Otis v. Dargan.]

the final settlement and contesting it as to the matters and things set forth in the bill.

The cause was submitted on bill, answer, demurrer, and testimony, and the chancellor dismissed the bill; and from that decree this appeal is taken.

GIBBONS & PRICE, for appellants.—Two of the complainants lived in Mississippi and had no actual notice of the settlement. This brings them within the influence of *Morrow* v. *Allison*, 39 Ala. 70, where decree on final settlement of an administrator's account, was opened in equity at instance of a non-resident not having actual notice, on proof that the administrator obtained credit, which he must have known he was not entitled to. The other complainant lived in England and had no notice of any kind.

Section 2774 of the Revised Code cannot receive the construction contended for by appellee. *Mock's Heirs* v. *Steele*, 34 Ala. 198; *Meadows & Edwards* v. *Brassel*, 46 Ala. 355. In the last case it is said: "The statute seems to contemplate a review of the settlement made in the probate court upon specified errors positively charged, little short of the privilege and right of appeal." Unless actual knowledge of the errors in fact or law that have been committed, before the probate court in the final settlement, can be brought home to the heir or distributee, and he has wilfully neglected to make it available on the final settlement, he cannot and ought not to be debarred from a review, provided his bill is brought within two years. And it is a most wholesome law and should have a large and liberal construction.

In equity pleading in a case where a residuary legatee is proceeding against the administrator for his share of the estate, Judge Story uses the following language: "In general in such a case, all of the residuary legatees or distributees ought to be made parties so that the rights and claims of all may be conveniently established at the same time and in the same suit. But if any of such residuary legatees or distributees are out of the jurisdiction of the court and cannot conveniently be made parties, either as plaintiffs or defendants, the court will dispense with them and proceed to decree the shares of the parties before it. Such a decree is of course not conclusive upon the absentees, or rather, persons not made parties. But the general rule is dispensed with, because otherwise, persons having clear rights would, without their own fault, be precluded from asserting them even when the rights of others would not necessarily be prejudiced thereby." Story's Equity Pleading, p. 113, § 89, and notes.

[*Otis v. Dargan.*]

So careful is a court of equity to do no wrong to the absent by its decrees, and yet the defendant in this case claims that the decree of the probate court on a final settlement of the executor is a complete bar to the relief prayed in this case.

HANNIS TAYLOR and E. S. DARGAN, *contra.*—Whatever may have been the legal effect of a final settlement of an executor in the probate court before our Code, whether conclusive or but *prima facie*, it is unnecessary to inquire, for the Code introduces a new rule. Section 2274 of the Revised Code requires not only that errors or mistakes should be shown in the final settlement, but it must be shown, alike by allegations and proof, that the complainants were not guilty of negligence or default in suffering the decree to be rendered.

No rule is better established than that a court of equity will not relieve in regard to a matter as to which the complainant could have had redress in a previous litigation, unless he was prevented from obtaining it, by accident, fraud, or the act of the opposite party, *unmixed* with negligence or fault *on his part. Duckworth* v. *Johnson,* 35 Ala. 70.

The case of *Wilson* v. *Randall and wife,* 37 Ala. 76, uses the same language. The case of *Steele adm'r* v. *Mock's Heirs,* 34 Ala. 198, holds the same doctrine; and in the case of *Meadows* v. *Edwards,* 46 Ala., the court says: "Section 2274, Revised Code, which authorizes this proceeding, requires but two conditions, errors of law or of fact, and the absence of fault or neglect of the injured party."

Tested by this rule, which is too well settled to be disputed, not only by decisions, but in fact, is the plain language of the Code itself, the bill is fatally defective; for so far from showing that there was neither fault nor neglect on the part of complainants, the allegations of the bills show positive neglect and *fault.*

BRICKELL, C. J.—A court of equity has original jurisdiction to enforce the trusts of an administration—to compel the appropriation of the assets to the payment of debts, and when these are extinguished, to the satisfaction of legacies; or in cases of intestacy, to apply them according to the statute of distributions. Of this jurisdiction it is not divested by the statutes conferring on courts of probate, cognizance of the settlement of the accounts of executors and administrators—of the payment of legacies, making distributions, and power to render final decrees, adjudicating and determ-

[Otis v. Dargan.]

ining the rights and interests of legatees and distributees, and fixing the liability of the executor or administrator. 1 Brick. Dig. 647, § 120. The jurisdiction of the court of probate, so far as it extends, is concurrent with that of a court of equity. The present court of probate has succeeded to the jurisdiction of the former orphan's court, and in its constitution and modes of proceeding vary but little from that court. While the orphan's court existed, it was often declared by this court, that when having jurisdiction it had commenced proceedings for a final settlement of an administration, in the absence of an intervening equity, such proceedings could not be arrested by the interference of a court of chancery. Or, if it had proceeded to a final settlement, rendering a final decree, such decree could not be opened without allegation and proof of fraud, or some other special cause for interposition. Such decree had all the force and conclusiveness of a judgment of a court of law. *King* v. *Smith*, 15 Ala. 264.

The statute creating the courts of probate, modified to some extent this principle. It provided that courts of chancery, should on bill filed by either party, at any time within three years, correct any errors in law or fact, which may be shown to exist in any matter decided by said courts. If the error did not appear of record, it could not be corrected, except on allegation and proof that it occurred without fraud, accident or neglect on the part of the party complaining. Pamph. Acts 1849–50, p. 33, § 31. This provision was not carried into the Code, but was superseded by an enactment, declaring that "where any error of law, or fact, has occurred in the settlement of any estate of a decedent, to the injury of any party, without any fault or neglect on his part, such party may correct such error by bill in chancery, within two years after the final settlement thereof." R. C. § 2274. The difference between the act of 1850, and the Code, is manifest. Under the former, if the error complained of appeared of record, the bill in equity for its correction was as much a matter of course, and of right, as an appeal or writ of error. It was only when the error depended on extrinsic evidence that the party complaining was bound to acquit himself of fault or neglect. The acquittal of fault or neglect, under the Code, is indispensable, whether the error complained of is apparent on the record, or is made to appear by evidence *dehors* the record. Unless the Code operates to bar any impeachment of a decree rendered in the court of probate, after the lapse of two years from its rendition, it does not affect or impair the general jurisdiction of a court of equity to

[Otis *v.* Dargan.]

open such decrees because of fraud, accident or mistake. At least, it furnishes a cumulative remedy, revisory in its nature, so far as correcting errors of law, to which a party injured, who can acquit himself of fraud or neglect, is entitled. *Meadows* v. *Edwards,* 46 Ala. 354. The error of law or fact, which is sought to be corrected, must be clearly and distinctly pointed out. The certainty requisite in a bill to correct errors in a stated account, or to surcharge and falsify it, is necessary to support a bill under this statute. General allegations of error, without specifying particulars, will not avail. By proper allegations and proof, the party complaining must also show that the errors occurred without fault or neglect on his part. A general allegation of diligence, or that it was without his fault or neglect, is not sufficient. Such allegation could be made in every case, and is but an averment of the party's own opinion or judgment, as to what he has done or omitted. It must be shown how the error occurred, and what cause prevented the party from objecting to and avoiding it when the settlement was made. Otherwise, the statute would be a mere cloak for inattention to and negligence of settlements in the courts of probate—would prolong litigation, and derogate from the value and dignity of the judgments of a court of competent jurisdiction.

If resort is had to the general jurisdiction of a court of equity, to impeach the justice of a judgment or decree, of a court of concurrent jurisdiction, or the judgments of a court of law, because of fraud in its rendition, or on facts available in opposition to the judgment or decree in the court rendering it, the party complaining must state with certainty and precision, every fact constituting the fraud, that his adversary may controvert or disprove them, if necessary; and must exclude every conclusion of fraud or negligence on his part. If relief is sought, not on allegations of fraud, but solely because of facts available in bar of the decree or judgment in the court rendering it, these facts must be stated with like certainty and precision, and it must be shown that the failure to make them available in bar of the decree or judgment, is unmixed with negligence on the part of the party complaining. *French* v. *Garner,* 7 Port. 549; *Duckworth* v. *Duckworth,* 35 Ala. 70; *Hair* v. *Lowe,* 19 Ala. 224. Conscience, good faith, and *reasonable diligence,* must concur, or a court of equity is passive. A party having a complete remedy or defence, which he neglects to use and permits to be concluded by the judgment or decree of a court of competent jurisdiction, cannot reasonably ask a court of equity to cure his omission, and thereby encourage useless

Vol. liii.

[Otis v. Dargan.]

and expensive litigation, and incur the hazards of subverting justice. *Sample* v. *Barnes*, 14 How. 70.

Applying the principles stated to the case presented by the pleadings and proof, and the appellants were not entitled to relief. If it could be conceded the bill is sufficiently certain in its allegations—that it discloses error or fraud in the settlement had in the court of probate—it is clear all the matters complained of were cognizable in that court, and could there have been made available in bar of the decree rendered. The only excuse preferred for not making defense in that court, is the confidence reposed in the appellee, by the tenants for life and the remaindermen; and that the remaindermen (one of whom was wholly ignorant of his rights, until a short time before the filing of the bill), had no notice or knowledge of the settlement. The record of the settlement had in the court of probate, recites that the only notice thereof, required by law, was given in the mode prescribed. If this recital could in any aspect of the case be impeached, it stands now wholly uncontradicted, and to it, absolute verity must be accorded. Personal notice, by service of process requiring a party to appear, or informing him of the pendency of proceeding affecting his interests, is necessary to support only a few of the decrees of a court of probate, though such decrees operate as effectually in determining and divesting rights, as the judgments or decrees of the courts of largest jurisdiction, to the validity of which personal service of process is generally essential. The policy pervading the statutes regulating proceedings in that court, is to charge all having interests in the estates committed to its jurisdiction, with notice of its proceedings, from their inception by the grant of administration, to their conclusion by the final settlement of the executor and administrator. The whole theory of the organization of the court, is to advance a speedy settlement and distribution of estates—to avoid the delays incident to other courts, pursuing other remedies and modes of proceeding, in the form of adversary suits. In this court the proceedings are never adversary, until a party intervenes and initiates a contest. *Watson* v. *May*, 8 Ala. 177; *Clemens* v. *Patterson*, 38 Ala. 721. The statute expressly requires, where application for the probate of a will is made, that citation shall issue to, and be personally served on the heirs resident in the State. R. C. § 1951. If such notice is not given, the decree is not void, but voidable only on error or appeal. *Blakey* v. *Blakey*, 33 Ala. 611; *Deslonde* v. *Darrington*, 29 Ala. 92; *Lovett* v. *Chisholm*, 30 Ala. 88. The right of an heir becomes vested on the death of his an-

[Otis *v.* Dargan.]

cestor, and the only bar to its accrual as a vested right, protected by every principle of law, protecting any other vested right, is a valid disposition by will. *Denson* v. *Autrey*, 21 Ala. 205. Yet, without personal notice to him, an instrument may be proven as the will of his ancestor, finally concluding his right as heir, which is highly favored in the law. True, the reason generally assigned, is that the proceeding for the probate of a will is *in rem*. Whatever may have been the reason assigned in the ecclesiastical courts, or in the courts of the common law, for the rule, the reason applies in all its force to a proceeding for probate under our statutes. These statutes are parts of a system framed on the policy of committing the probate of wills, and the administration of estates, to a tribunal capable of conducting them to a more speedy conclusion than would be attained in other jurisdictions, confined to remedies and proceedings, of necessity, dilitory, and to charge all who have interests with notice of the court in which the administration is had. Thus charged, they are put on inquiry from the death of the person through whom they claim, and it is but seldom any real injury can result to them, if they observe the diligence expected of men of ordinary prudence. Where an application for the sale of lands is made to a court of probate, notice by service of citation on the heirs resident in the State is required. Yet, though such notice is not given, and the title of the heir is divested by a sale under the decree rendered, the decree of sale is valid until reversed on error. 1 Brick. Dig. 941, § 385–6.

Until 1843, there was not a statutory provision, which could even by implication be regarded, as requiring parties to be made to a final settlement of an administration in a court of probate. Mere notice by publication, that the account and vouchers had been filed, and that on a particular day the court would proceed to state, audit and allow them, was the only requisite. The notice was addressed to all parties concerned in adverse interest, without naming or describing them. Infants may have been the only parties in interest, and yet no statute required that a guardian *ad litem* should be appointed to represent them. It is not believed to have been the practice to appoint such guardian, and no instance can be found of a reversal of a decree of settlement, because of the failure to make such appointment, until after the act of 1843. On the judge of the court was devolved the duty of examining and auditing the accounts, and reporting the same for allowance. Of the time at which the allowance was to be made, notice was given by advertisement. If at

[Otis v. Dargan.]

this time no exception was made, the accounts as stated were allowed.   Aik. Dig. 182, § 27.  The act of 1843, required the executor or administrator, on filing his accounts and vouchers for an annual, or final sttlement, to file with the same, on oath, a statement of the heirs or legatees, specifying which were minors, *femes covert* and *non compos mentis*.   The declared object being, that the court should be informed in whose favor to render a decree, and to enable it to appoint guardians *ad litem* for the minor heirs and legatees, if necessary.   The duty of the executor or administrator in this respect was declared official, and he and his sureties liable on his official bond for a neglect of it.   Clay's Dig. 229, § 43. So far as this statute required a statement of the heirs or legatees to be filed, it was soon after its enactment declared directory, and the omission to file such statement, not an error which would reverse a decree rendered on final settlement.   *Eddings* v. *Long*, 10 Ala. 203, approved in *Clack* v. *Clack*, 20 Ala. 461.  So far as it required the court to appoint a guardian *ad litem* for infant heirs or legatees, it was construed as mandatory, and the failure, an error which would reverse the decree rendered. *Jenkins* v. *Jenkins* 16 Ala. 693. *Clack* v. *Clack*, *supra*; *King* v. *Collins*, 21 Ala. 363.   With this construction of the statute, it was substantially re-enacted in the Code, (R. C. §2137–45,) and the same construction has since been followed.  *Morgan* v. *Morgan*, 35 Ala. 303.

The appellee on the filing his accounts and vouchers, for the final settlement now sought to be vacated, conformed to the direction of the statute, by stating in writing, under oath, the names, age, and residence of the legatees for life and in remainder.   The truth of this statement is not controverted, but admitted.  So far as he had authority, or any remedy by which to make them parties, he pursued it.  The only notice, which the law permits, by publication was given.   It fully appears, the immediate successor of the appellee in the administration, the administratrix *de bonis non*, had notice and participated in the settlement.  If the statutes have any force—if all settlements had in a court of probate, are not to be treated as *ex parte*, the parties concerned in adverse interest in this administration, were parties to, and had notice of this settlement.   The notice by publication, prescribed in the statutes regulating proceedings in the court of probate, has every obligatory element of the personal service of process, in the courts of common law, or courts of chancery. The constitution of these courts, the fundamental law of their organization, provides compulsory process, commanding a party

[Otis v. Dargan.]

to appear, under the pain and penalty of standing in contempt, if he makes default. If statutes intervene and prescribe another mode, than compulsory process, to bring him who is personally without the territorial jurisdiction of the court, within its jurisdiction, such mode may be termed *constructive notice.* These phrases are not objectionable, until they are perverted. But when the only mode of notice, recognized by the law of the court, is observed, it must have full effect, or the proceedings cannot be treated as judicial and operate as such. There is no room for a distinction between such notice, and notice given in another mode, by another court— each give the notice required by the law of its constitution. The allegation that the complainants had not notice of the settlement, cannot therefore be admitted as a fact, nor any right predicated on it. They had notice—full legal notice, and are affected by it to the same extent, that they would have been, if in a court of law, they had been served with a writ or summons. But one of them denies knowledge of his rights under the will of the testator. None deny, that they knew where the testator resided, and where he died. They knew the law, that in the court of probate of the county of his residence, probate of his will must be had, if he died testate ; or if he died intestate, that court must grant administration. The probate of a will, or the grant of administration, is essentially a public proceeding, of which the world is charged with knowledge. Having this knowledge, they knew where to inquire as to the administration of the estate.

They knew that after the lapse of eighteen months from the grant of administration, the executor could make a final settlement, and surrender to the tenants for life the estate not specifically devised. Charged by law with this knowledge, and two of the complainants, Charles and Eliza Heirn, having it as a matter of fact, what prevented them from ascertaining and presenting to the court of probate, every fact, on which they now rely, to open and annul the final decree of that court ? They reposed confidence in the appellee, it is alleged ; but there is no evidence, that it was in any other degree, than such confidence as is usually extended from one person to another, in the ordinary transactions of life. The confidence, the trust, which when abused, will invoke the aid of a court of equity, is not shown to have existed, except so far as it may be deduced from the relation of executor and legatee in every case. Soon after the lapse of the life estate, they discover the facts on which this suit is founded. Within less than six months they commence suit. The tenants for life, whose testimony in reference to

[Otis *v.* Dargan.]

these facts, would be of the highest value, are dead; and of that testimony, the appellee and the court is deprived. The diligence which their deaths quickened, if exercised during their lives, it is manifest, would have furnished the complainants, all the knowledge they now possess, and on which they now proceed. The appellee and the court could have had the evidence of the tenants for life, and the right and justice of the case fully ascertained. It is not an answer to say, that the complainant's rights did not spring up until the expiration of the life estate. They vested on the death of the testator, and were postponed in enjoyment only. They could have protected the *corpus* of the estate from waste, then, with as little difficulty, and by the same title, on which they can now reduce it to possession. It is the *corpus* only, to which they can lay claim. The income and profits, belonged to the tenants for life, and it is not material to the complainants whether they were wasted or not.

It is, we think, certain that two of the complainants, Charles and Eliza Heirn, had knowledge of this settlement, distinct from, and independent of that which the law must impute from the decree of the court, and the proceedings on which it was founded. Prior to the settlement and preparatory to it, an administrator *de bonis non* was appointed, the appellee having resigned as executor. They became the sureties on the bond of the administratrix *de bonis non*. It is possible, but not probable, that they may have been ignorant of the fact of settlement. The reasonable conclusion is, that they knew the appointment and qualification of the administratrix *de bonis non*, was for the purpose of the settlement. Having thus the actual knowledge of the settlement, which is so prominently insisted on in some of the authorities to which we have been referred, what excuse can be preferred for their failure to inquire into it, and avail themselves of the facts they now press to avoid it? The executor had resigned, the administration was not complete, for a successor to him had been appointed, and he was seeking a final settlement which was to be a final discharge of his liability. These facts certainly were sufficient, if they had ordinary care for their interest to put them on inquiry. If they did not inquire, but acquiesed in the settlement, they can not now be heard to say, if error of law or fact occurred, that it was without their fault or neglect. They surely neglected to inquire, or to take any step to prevent such error from intervening. Whether they base their right to relief on the statute, or on the general jurisdiction of a court of equity, their negligence is a bar. *Allman* v. *Owen*, 31 Ala. 167. If

they are barred, the chancellor did not err in dismissing the bill, on the familiar principle in a court of equity, when two or more join as complainants, all must be entitled to relief, or the suit is not maintainable. *Hardeman,* v. *Sims,* 3 Ala. 747 ; *Wilkins* v. *Judge,* 14 Ala. 135 ; *Plant* v. *Voegelin,* 30 Ala. 160 ; *Vaughn* v. *Lovejoy,* 34 Ala. 437.

Nor can it be admitted the complainant Cornelia, has, either by allegation or proof, acquitted herself of fault or neglect. The allegation is, "the said Cornelia did not know at that time, (the time of the settlement,) and until a short time before the filing of this bill, that she had any interest in said estate, or of the administration of the same by the defendant." This is a simple, general averment of ignorance of her rights. It is not a negation of facts, or of notice or knowledge of facts, which would have put a man of ordinary prudence, and ought to have put her on inquiry as to her rights. It is not a denial of knowledge that the appellee was executor, administering the estate of the testator. It is not a denial of knowledge of her relation to the testator—of his residence and death—of the fact that he had an estate, which must by operation of law, descend to his heirs, or be distributed to his next of kin, if he died intestate, or devolve under his will if he died testate. It is not a denial of the fact that she bore a relation to him, which made her his next of kin, or if he died testate, a probable recipient of his bounty. Having knowledge of these facts, she was singularly supine, if she never made inquiry, and her supineness is negligence. An allegation not materially different from this, was declared by this court in *Martin* v. *Br. Bank Decatur,* 31 Ala. 122, wholly insufficient as a negation of a want of knowledge of facts, which ought to have put a party on inquiry, and would have charged him with knowledge of the facts, of which he preferred ignorance.

We prefer to rest the affirmance of the decree of the chancellor, on the proposition, that the settlement in the court of probate, is a bar to the relief sought by the bill. If errors intervened, in that settlement, the complainants have not shown that it was without fault or neglect on their part; that they did not in that court, avoid such errors. The powers of the court were ample, and of them, the complainants could have had full benefit. A court of equity refusing to interpose in such case, proceeds upon the highest and most conservative public policy. A judgment or decree of a court of competent jurisdiction, must be, except under extraordinary circumstances, an end of litigation. Truth, justice, the peace of families, and the repose of society, demand this

[Smith v. Huckabee.]

dignity shall be awarded to it. The parties litigant must be diligent in asserting their rights or submit to have them concluded, by a tribunal having capacity to adjudge them. If from the operation of the rule occasional injustice is wrought, or fraud accomplished, it is the result of the negligence, of the party injured. It is better he should bear the loss, than the value of judgments should be impaired.

It is due to the appellee, to say, the evidence fully vindicates him from all fraud, or intentional error, or from any dereliction of duty as executor. An error crept into his accounts, to which his attention was not called, nor its correction claimed, until the bill was filed. It could result in but a small balance against him, which he by his answer offered to pay, and would doubtless have paid without suit, on being informed of it.

The decree is affirmed.

MANNING, J., not sitting, having been of counsel for appellee.