# Hutton *et al. v.* Williams *et al.*

60   107
106  425

*Bill in Equity for Settlement of Guardianship and Administration.*

1.  *Settlement of guardian's accounts in Probate Court; effect of.*—A settlement by a guardian with the Probate Court, after the ward has attained his majority, without the appearance of the ward in person, by attorney, or by guardian *ad litem*, whether it be void, voidable, or only irregular, is an admission of record by him of his indebtedness to the ward, for the sum shown to be in his hands; and so, an account of the hiring of his ward's slaves, filed in said court, is a similar admission, rendering him liable to account for the hires.

2.  *Liability of guardian and administrator, when offices are united in same person.*—When an administrator becomes guardian of one of the infant distributees of his intestate's estate, he does not hold the ward's distributive interest as guardian, until it has been separated and distinguished from the other assets in his hands as administrator; but, when a guardian, whose authority has terminated by the majority of the ward, afterwards becomes administrator of the ward's estate, not having settled his accounts as guardian, his liability as guardian ceases by operation of law, and he becomes liable as administrator; and a subsequent settlement of his guardianship, made by him in the Probate Court, though void as a judicial proceeding, is an election by him to hold and account for the estate as administrator.

3.  *Probate decree on settlement of administrator's accounts ; conclusiveness of.* A decree rendered by the Probate Court, on the final settlement of an administrator's accounts, is as valid and conclusive as a decree in chancery on a bill for an account, except so far as the statute authorizes a court of equity to intervene for the correction of errors of law or of fact.

4.  *Misjoinder of complainants.*—Where two or more persons join as complainants in a bill, all must be entitled to relief, or the bill must be dismissed as to all.

5.  *Infancy as ground of defense or relief against decree.*—Infancy is a personal privilege, available only to the infant himself, or his personal representative: a decree may be voidable by him, while valid and binding on all other parties; in which case, they can not invoke his infancy to protect them against the operation and effect of the decree, nor join with him in a bill for relief against it.

6.  *Probate decree on settlement of administrator's accounts ; validity of, as affected by omission to file list of heirs, and want of parties.*—The failure or omission of the administrator to file a list of the heirs and distributees of the estate, as required by the statute (Code of 1876, § 2509), does not render the decree on the settlement of his accounts invalid, nor even erroneous; and if the decree ascertains the amount of his indebtedness, and the credits to which he is entitled, showing a balance in his favor, it is valid and binding until reversed, although no execution could issue on it.

APPEAL from the Chancery Court of Greene.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 25th March, 1873, by Emmett C. Hutton and Mary E. Hutton, the latter suing as administratrix of the estate of her deceased husband, Aquilla

D. Hutton, who was a brother of said Emmett C.; against David H. Williams, as guardian and administrator of the estate of William B. Hutton, deceased, who was a brother of said Emmett C. and Aquilla D.; and also against Eugenia Williams, the wife of said David H., who was a sister of said Emmett and Aquilla, and Aurelius Hutton, another brother; and against Whitfield Walker, as a debtor of said D. H. Williams. It sought a settlement and account of the estate of said William B. Hutton in the hands of said D. H. Williams as his guardian, and also as his administrator; or to surcharge and falsify the settlements which he had made, at different times, with the Probate Court of said county, from which he derived his letters as guardian and as administrator. The allegations of the bill, and the prayer for relief, except as to names, dates, and amounts, were almost identical with the case of *Hutton v. Williams, post,* which see.

William B. Hutton, the settlement of whose estate was the matter in controversy, was killed at the battle of Chancellorsville, in Virginia, on the 3d May, 1863; but there is some mistake in the record, or some uncertainty, as to the date of his birth. In the " Family Record " contained in the Bible, which was made an exhibit to the answer of D. H. Williams, it is stated that he was born on the 20th November, 1843; but this is probably a clerical mistake, since the entry of his death states that he was then twenty-two years, two months, and eighteen days old, which would show that he was born on the 15th February, 1841; and it is stated in the record in several places, by different members of the family, that he was born on February 15, 1841. Said D. H. Williams was appointed his guardian on the 2d January, 1854, and made several partial or annual settlements of his guardianship. By an annual settlement made on the 10th January, 1861, a balance of $1,145.92 was ascertained to be due from him to his ward; and by another annual settlement, made on the 6th December, 1862, the balance in favor of his ward was stated at $1,575.50; but no guardian *ad litem* was appointed for the ward on either of these settlements, nor was he present in person or by attorney. On the 13th April, 1863, the guardian filed in the Probate Court an account of the hire of the ward's slaves for the year 1863, which was under oath, and which stated that the guardian had himself hired three of the slaves for $110, and had hired out a negro woman and her five children for $25; and it was ordered by the court " that the same be received and recorded." On the death of said W. B. Hutton, who had never married, his heirs and distributees were his brothers and sisters, Eugenia Williams, Aquilla D., Aurelius, and Emmett C., above named.

Letters of administration on his estate were granted by said
Probate Court to said D. H. Williams, on the 26th October,
1863, and he duly qualified, and gave bond; and on the 10th
March, 1864, having previously filed his accounts and vouch-
ers for a final settlement of his guardianship, the court ren-
dered the following decree:

"This being the time to which has been continued for D.
H. Williams, guardian of W. B. Hutton, a minor, to make a
final settlement of his said guardianship, the case being
called, and the settlement coming on to be made, came the
guardian in his own proper person; and the court being sat-
isfied that due and legal notice of the filing of the guardian's
accounts and vouchers, and of the time set for making said
settlement, has been given by publication," &c., " as required
by the former order of this court; whereupon the court pro-
ceeded to audit said account, and, after due examination of
the same, and consideration of the vouchers, the court stated
said account; and it appears from the same, as thus stated,
that the receipts of the guardian up to the 1st January, 1863,
including the amount due the ward on the last annual settle-
ment, interest, and hire of slaves, amounted to the sum of
$1,832.22, and that his disbursements up to the 1st May,
1863, supported by good and legal vouchers, passed and
allowed him by the court, including amount allowed guardian
for commissions, court costs, &c., amounted to $205.75, which
being deducted from the receipts leaves a balance of $1,626.47
in the hands of the guardian; and the same is hereby decreed
by the court to be retained by D. H. Williams as administra-
tor, he having been heretofore regularly appointed by this
court as such."

On the 31st March, 1864, said Williams, as administrator
of W. B. Hutton, reported to the court that he had in his
hands, on the 22d March, 1864, the sum of $1,600 in treasury-
notes of the Confederate States, assets of said estate, and
that, "not being able to invest the same otherwise, or to
apply the same in payment of debts, he had funded the same,
on said 22d March, 1864, in four per cent. bonds of the Con-
federate States;" that by mistake on the part of his agent,
who acted for him in the matter, the said sum, with other
moneys which he held as guardian of several infants, was in-
vested in the name of said D. H. Williams individually, and
not as administrator and guardian, as it ought to have been;
and he asked that he be allowed proper credits for these in-
vestments, on settlement of his accounts as guardian and
administrator. On the filing of this report, it was ordered
by the court, "that the same be received and recorded."
On the 5th February, 1866, having previously filed his ac-

counts and vouchers for a final settlement of his administration, the following decree was rendered by the court: "This being the time to which has been continued the final settlement of the administration of the estate of W. B. Hutton, deceased, by D. H. Williams, the administrator, the case being called, and the settlement coming on to be made, the administrator came in his own proper person; and the court being satisfied that due and legal notice has been given of the filing of the accounts and vouchers, and of the time set for making said settlement, as required by law, and the previous order of this court, viz., by publication for three weeks in the *Whig and Observer*, a weekly newspaper published in the county; whereupon, the court proceeded to examine and audit said account, and, after due examination of the same, and consideration of the vouchers, proceeded to state, and stated said account; and from the same, as stated, it appears that the receipts of the administrator, up to the day of this settlement, amounted to the sum of $1,630.87, and that his disbursements up to the same time, supported by good and legal vouchers, passed and allowed by the court, amounted to $99.75, which, when deducted from the amount of receipts, leaves a balance of $1,531.12 due the estate. The four per cent. bonds are considered worthless by the court." In the account as stated, on which this decree is founded, the only items charged against the administrator are: "Amount due Jan. 1, 1864, $26.47; amount in four per cent. Confed. bond, $1,600—$1,630.37;" while the credits are $99.75, and the balance is thus stated: "Balance due, and the four per cent. Confed. bond worthless, as is considered by the court, $1,531.12."

Aquilla D. Hutton was born on the 20th November, 1843, and died some time during the year 1870; and letters of administration on his estate were granted on the 14th February, 1871, to his widow, Mary E. Hutton, one of the complainants. Emmett C. Hutton, the other complainant in the bill, attained his majority on the 4th May, 1871. The bill alleged that each of the settlements above named was null and void; that no guardian *ad litem* was appointed to represent the infants; that no list of heirs and distributees was filed by the administrator on said final settlement; that he had wasted the funds and assets of the estate, and converted them into worthless Confederate securities; that he had failed to account for divers sums with which he ought to have been charged, and had been allowed credits for expenditures which were exorbitant and illegal; but no particular items, on either side of the account, were specified. The prayer was, that the said several settlements be set aside

and held for nought, or be opened, surcharged, and falsified, and that said D. H. Williams be compelled to account as guardian and administrator of said W. B. Hutton and his estate.

An answer to the bill was filed by D. H. Williams, denying all the charges of misconduct on his part in the management of the estate, and insisting on the correctness and validity of his several settlements.     He alleged that, at the time of his settlement as guardian on the 6th December, 1862, his ward, W. B. Hutton, was of full age, and was afterward fully informed of the settlement, and ratified and approved it, and constituted said Williams his general agent to attend to all his business during his absence in the army, as shown by several leters which he wrote to respondent, and which were made exhibits to the answer ; that he also authorized and approved the investment in Confederate bonds, as shown by another letter, which was lost ; that at the time of the final settlement as administrator, in February, 1866, A. D. Hutton was of full age, and was personly present, and acted as guardian *ad litem* for Emmett C., and assisted in the calculations, and fully approved the settlement.     He insisted by way of plea, as well as answer, that A. D. Hutton was concluded and barred by said final decree, and therefore his administratrix was also concluded ; and he demurred to the bill for want of equity, because it did not sufficiently specify errors and mistakes in said final decree, and because it was not filed within two years after the rendition of said final decree.

The following are extracts from the letters exhibited with the answer, dated respectively February 20, March 31, and April 6, 1863 : "On yesterday, I received a letter from *Reelie*, stating the whereabouts of my negroes at present, as well as a request from you for instructions how to act in a certain case with regard to the present situation of affairs.     Considering the hardness of the times, I feel myself fully satisfied, so far as I have been informed.     Unused to the power of instruction, which a maturity of years has at a very unfortunate time thrown into my hands, I deem it best, however opposed to your own wishes on the subject, to rest the whole matter in your hands, until, freed from the shackles of the war, I shall be able to join you again.     You will then, in future, as heretofore, deal with what little property I have left, in that manner which seems to you to best redound to my interest.     I am satisfied that your superior acquaintance with it, as well as with business matters in general, will enable you to turn it to a better account than any instructions I might give.     I am glad, however, to see that you are

[Hutton et al. v. Williams et al.]

unwilling to act without instructions, being confident that it arises from a conscientious policy [*feeling*?]    It is my wish that you send me, at as early day as possible, a general statement of my effects.   The object of this paper will be a condensed summary of my debts and credits.   Write an approximate estimate of my effects.   I am fearful that I have about come to the verge of bankruptcy, so heavy have been my expenditures of late years."   "From your letter it seems, that my financial condition is far better than my most ardent expectations had led me to believe ; that is, if I am to understand from your letter that I am not only clear of all debt, but that there is due $1,676.50 besides.   I think this is the plain interpretation of your letter.   I wish you, however, to assure me in your next of this view of the matter.   I wish then, with this view of the affair, here to place upon record, for your future gratification, my full satisfaction with your conduct of my business, at the same time that I can only wonder you have succeeded so well."   "I received a letter from your brother a few days ago, in reply to one from me asking him for a statement of my business affairs.   I was much pleased with his statement.   He brings me out of debt, with $1600, besides my negroes.   I must express my surprise how such could be the case, when my schooling has been so heavy.   It is solely due to his financial powers."

There was an attempt to amend the bill, by specifying errors and mistakes in the settlements, but the amendment requires no special notice.   The chancellor overruled the demurrer to the bill, but, on final hearing, on pleadings and proof, dismissed the bill, holding that the complainants had failed to make out a case for releif.   From this decree the complainants now appeal, and here assign it as error.

WATTS & SONS, for appellants.—1.   The settlement of the guardian's accounts by the administrator, in March, 1864, was void for want of jurisdiction—it was and is a nullity, and will not even support an appeal.—*Cockrell v. Hays*, 41 Ala. 75 :  *Carswell v. Spencer*, 44 Ala. 204 ;  *Baldwin v. Deming's Adm'r*, 51 Ala. 553.

2.   The settlement of the administrator's account, in 1866, was entirely *ex parte*.   No list of heirs and distributees was filed, as required by the statute (Code of 1876, § 2509), and no parties were brought in.   It does not purport to discharge the administrator, and is not rendered in favor of, or against any one.   It has none of the requisites of a final decree, and would not support an execution.— *Willis v, Willis*, 16 Ala. 652 ;  *Watt v. Watt*, 37 Ala. 543.

3.   The investment in Confederate bonds was without

[Hutton et al. v. Williams et al.]

authority. The intestate's letters could not authorize it; because the investment was made in March, 1864, while he died in May, 1863 ; and his death was a revocation of the agency, or power of attorney. Nor did the law authorize such investment.—*Lockhart v. Horn,* 17 Wallace, 570.

4. The settlements being void, the complainants were entitled to a general account of the estate, whether the bill was sufficient to surcharge and falsify the settlements or not. *Otis v. Dargan,* 53 Ala. 178 ; *Waring v. Lewis,* 53 Ala. 615.

SNEDECOR & COCKRELL, and W. COLEMAN, *contra.*—1. The intestate, W. B. Hutton, was fully informed of the settlement made in December, 1862, and ratified and approved it ; and he afterward appointed Williams his general agent, with full power to transact all his business. No fraud being shown, the intestate himself was concluded by the acts of his agent, and the distributees of his estate are equally concluded.—20 Ala. 313 ; 38 Ala. 208 ; 39 Ala. 33 ; 19 Ala. 430 ; 16 Ala. 714 ; 21 Ala. 534.

2. The final settlement of the guardianship was not void, because the guardian was also administrator of the estate. The court had jurisdiction of the subject-matter, and of the parties, and its decree is valid until reversed, or only voidable.—*Bruce's Executor v. Strickland,* 47 Ala. 199 ; *Carswell v. Spencer,* 44 Ala. 205.

4. It was the duty of the court to appoint a guardian *ad litem* for the infants ; but the failure to do so would, at most, only render the decree voidable, and valid until reversed.— *Kavanaugh v. Thompson,* 16 Ala. 817 ; *Frierson v. Travis,* 39 Ala. 150 ; 47 Ala. 196 ; 16 Ala. 49,509, 693 ; 22 Ala. 478 ; 28 Ala. 265 ; 21 Ala. 522. If the decree be void as to the infant complainant, it is nevertheless binding and conclusive on the adult parties.

5. The failure to file a list of the heirs and distributees did not affect the validity of the decree.—*Clack v. Clack,* 20 Ala. 462.

6. As a bill to surcharge and falsify the settlement, the bill is fatally defective.—*Cowan v. Jones,* 27 Ala. 317 ; Story's Eq. Pl. §§ 800–01 ; 1 Daniel's Ch. Pr. 424 ; 2 *Ib.* 765 ; 36 Ala. 720. Besides, it was barred by the statutory limitation of two years.—Code of 1876, §§ 3837–39.

BRICKELL, C. J.—We do not find it necessary to consider the questions touching the regularity and validity of the settlements of his guardianship made by Williams in the Court of Probate, which are so elaborately discussed by counsel. The majority of the ward terminated the guardian-

(8)

[Hutton et al. v. Williams et al.]

ship, and emancipated him from legal disability. Williams' authority as guardian ceased, and the duty resting upon him was a surrender to the ward of his estate, and a full accounting for the administration of it during the period of the guardianship.—Schouler's Dom. Rel. 423. The settlement made by Williams on the 6th day of December, 1862, may be irregular, or it may be void, and incapable of supporting an execution against him and his sureties; it is, nevertheless, an admission of record, that he was of that day, a day subsequent to the ward's majority, indebted to the ward in the sum of fifteen hundred and seventy-one 50-100 dollars. *Hughes v. Mitchell*, 19 Ala. 268. The account of the hire of the slaves of the ward for the year 1863, filed in the Court of Probate on the 13th of April of that year, was also an admission that, though his authority as guardian had terminated, he had, as the bailee or agent, or without authority of the ward, hired the slaves for that year, rendering him liable to account for the hire.

2. On the death of the ward, and the appointment and qualification of Williams as his administrator, the duty of collecting and receiving the balance he had admitted to be due on the settlement in the Court of Probate, and the hire of the slaves for 1863, and also the duty of demanding possession of the ward's estate, and a full account of its administration, devolved on Williams. On him, also, rested the obligation of making payment, and of surrendering and accounting. The duty and obligation coexisting in the same person, the presumption of law is, the duty was performed, and the obligation discharged. Liability in the capacity of guardian, or of bailee or agent, or even as a tortfeasor, was extinguished, and liability to the extent of that liability in the new capacity of administrator was incurred.—*Ragland v. Calhoun*, 36 Ala. 606; *Whitworth v. Oliver*, 39 Ala. 286; *Collier v. Windham*, 27 Ala. 291. The general principle is, that if the offices of executor or administrator, and of guardian, are united in the same person, and the guardian, in that capacity, can acquire possession only from the executor or administrator, as guardian he does not hold the assets until they are separated and distinguished from the assets held as executor.—*Davis v. Davis*, 10 Ala. 299. The principle involves the existence, at the same time, of two distinct fiduciary relations. In the present case, as we have said, the guardianship had expired before the death of the ward, and there remained in the guardian no authority; and the only duty with which he was charged, was that of surrendering the estate to the ward, and accounting for its administration. On his appointment as administrator, no act was

VOL. LX.

necessary to transfer to his new capacity the liability incurred as guardian,—it was transferred by operation of law. If any such act was necessary, the settlement of his guardianship made in 1864, after his appointment as administrator, though it may be void as a judicial proceeding, was an election to hold the estate, and to account for it as administrator.—*Davis v. Davis, supra; Whitworth v. Oliver, supra.*

3. Holding the estate as administrator, and in that capacity answerable for his liability as guardian, the final settlement of the administration, made in 1866, involved a full and complete ascertainment of that liability. The final settlement of an administration in the Court of Probate, necessarily involves a final adjustment of the accounts of the administrator, charging him with all wherewith by law he is chargeable, and crediting him with all wherewith he should be credited. The decree rendered thereon is as valid, and of the same conclusive operation, as the decree of a court of equity, rendered on a bill seeking from him an account, or on a bill filed by him for an account, except so far as the statute authorizes a court of equity to intervene for the correction of errors of law or of fact.—*King v. Smith,* 15 Ala. 264; *Allman v. Owen,* 31 Ala. 167; *Moore v. Lesueur,* 33 Ala. 243; *Otis v. Dargan,* 53 Ala. 178; *Waring v. Lewis,* 53 Ala. 615.

4-5. The material inquiry of the case is, therefore, the validity of the decree rendered by the Court of Probate on the final settlement of Williams' administration in 1866. If that decree is valid, it is a bar to this bill, whether it is regarded as a bill filed under the statute for the correction of errors of law or of fact in the settlement (Code of 1876, § 3837), or a bill addressed to the original jurisdiction of a court of equity, to compel an administrator to an account and distribution. It is a bar to the statutory remedy, if the allegations of the bill make a case within the statute; which we do not decide, because filed more than two years after the settlement. The intestate of the appellant, Mary E., was of full age at the time of the settlement, and lived for more than two years thereafter, free from all disability, and as to her the statute operates a bar. The disability of her co-complainant, Emmett C., can not shield her from the effect of the statutory bar. It is a familiar principle in a court of equity, that when two or more join as complainants, all must be entitled to relief, or the suit is not maintainable.— *Otis v. Dargan, supra.* The principle applies to this bill, in either of its aspects. The settlement and decree in the Court of Probate may be invalid as to the complainant, Emmett C., on grounds purely personal to him, and yet valid and operative as to the intestate of the complainant, Mary E. In-

fancy is a personal privilege, available only to the infant or his personal representative. If it is conceded the failure of the Court of Probate, or rather the failure of the record of the court, to show affirmatively the appointment of a guardian *ad litem*, and his acceptance of the appointment to represent Emmett C., then an infant, would render the settlement and decree void as to him, it would be valid and operative as to all persons of whom the court had jurisdiction. They can not invoke the infancy of another, to protect themselves against the operation and effect of a decree rendered by a court having plenary jurisdiction, so far as they were concerned, to adjudicate finally.—*Walker v. Jones*, 23 Ala. 448.

6. There are but three objections urged against the regularity and validity of the final settlement of the administration and the decree thereon. The *first* is, that the record does not show affirmatively the appointment of a guardian *ad litem* for the infant, Emmett C.; which, if it can be sustained,—and we purposely refrain from expressing an opinion in reference to that point,—is not available to support the present bill. The *second* is, that the record does not show that, on or prior to the making of the settlement, the administrator filed a list of the heirs. This is an omission, which would not avail on error to reverse the decree, and, of course, can not affect it when assailed collaterally.—*Eddings v. Long*, 10 Ala. 203; *Clack v. Clack*, 20 Ala. 461; *Otis v. Dargan*, *supra*. The *third* is, that no decree is rendered in favor of any one, and no execution could have issued on it. It is, nevertheless, clear that the court did ascertain and pass upon the question of the amount with which the administrator was chargeable, and the amount with which he should be credited. The credits, excluding the Confederate bond, which is declared worthless, exceeding the amount charged against the administrator, there could be no further decree— no decree declaring of whom the administrator should recover such balance. A decree rendered under such circumstances is binding until reversed.—*Watt v. Watt*, 37 Ala. 543.

The result is, the decree of the chancellor is affirmed.