[May v. Duke.]

# May *v*. Duke.

### Bill in Equity by Ward against Sureties of Deceased Guardian, &c.

1. *Guardianship; what not bar to bill for settlement of.*—An annual settlement passing and allowing the guardian's accounts, and ascertaining the balance due the ward, is not a bar to a bill filed by the ward after attaining majority, to compel a settlement of the guardianship.

2. *Guardian and sureties; of what can not take advantage.*—Neither the guardian, nor his sureties, can avoid a partial or final settlement of the guardianship, because the ward was not represented by guardian *ad litem;* but the ward may.

3. *Conversion; what amounts to.*—A loan of the ward's money upon no other security than the note of the borrower, no matter how undoubted his solvency and credit, is unauthorized; and the ward may elect to treat it as a conversion, or ratify it as proper administration; and in the latter event only does it become assets of the ward's estate.

4. *Same.*—If the ward does not ratify an unauthorized loan, neither purity of intention in making it, nor diligence and good faith in endeavoring to prevent loss thereby, will absolve the guardian from liability.

5. *Guardian; for what entitled to credits.*—A guardian is entitled to credit only for moneys actually expended, or necessaries furnished the ward; the *onus* being on the guardian to support his claim for credits, by evidence of a character which would support his action, if he were suing the ward in an action *ex contractu.*

6. *Petition; what relief can not be granted on.*—Where decree is rendered against co-sureties upon a bond, it is error to modify it, upon petition of one of the defendants, so as to render the other primarily liable for common burden; if such an equity exists, it must be presented by cross-bill.

APPEAL from Chancery Court of Sumter.

Heard before Hon. A. W. DILLARD.

The appellee, Anna K. Duke, upon attaining majority, filed her bill against May and Sprott, the former being a surety, and the latter the personal representative of one King, a co-surety upon the bond of appellee's guardian, seeking an account or decree for the amount due the ward.

The case made by the bill and exhibits was this: In 1854, Anna Duke, mother of appellee, was appointed her guardian, and May and King were sureties upon her bond, and received some $1,400, the amount of appellee's distributive share of her father's estate. On an annual settlement made by the guardian in 1857, a balance was ascertained in favor of the ward for $1,409.86. The guardian made no other settlement, and died in 1865, "leaving no personal represen-

[May v. Duke.]

tative, and no estate whatever, real or personal, to be represented."

The record of the annual settlement, which was made an exhibit to the bill, recites that on "this day came up for action and decree, by consent of A. C. Herndon, who is present and is appointed guardian *ad litem* of said minor, the account current of said guardian, for an annual settlement of her said guardianship, which on examination shows a receipt of assets to the sum of $1,754 28-100, and disbursements, properly avouched, to the sum of $314, leaving for the ward a balance on this day of 1,409 86-100 dollars; and it appearing that said account is legally stated, and properly avouched, it is therefore ordered and adjudged that the same be received, allowed, passed, recorded, and filed as an annual settlement of said guardianship up to 24th of October, 1857."

A demurrer to the bill, which set up in substance that complainant had an adequate remedy at law, and "already had all the rights of a judgment creditor, and could not have more if the court were to render a decree in her favor," was overruled.

The answers denied the regularity of the annual settlement and the correctness of the decree, and alleged that the guardian was entitled to credits for disbursements for the support and maintenance of the ward, exceeding the amount of the decree, and claimed a right to the benefit of such credits. The answers also contained other denials, not necessary to be further noticed. The cause was submitted for final decree, upon bill and exhibits, answers and testimony, and the chancellor decreed that complainant was entitled to relief, and directed an account and reference to the register for that purpose, who was directed to debit the respondents with the amount found due on the annual settlement, with interest to the 20th of November, 1874, and to allow them fair and reasonable allowance for the board, tuition, &c., of the ward from 1857 to March, 1865.

It is unnecessary to notice the evidence in detail. It was substantially without conflict, and proved the allegations of the bill. It was shown by the testimony of May that he was administrator of the estate of complainant's father, and that he kept the amount of her distributive share of his estate, giving the guardian a note therefor, without security, which he paid to the guardian in Confederate money in the year 1864.

The register made a report and stated an account upon the

[May v. Duke.]

basis of the decree, and allowed the respondents certain credits for amounts paid for the board and tuition of the ward, which did not amount yearly to enough to keep down interest on the amount due the ward. Exceptions were filed to this report, on the ground that the testimony showed respondents were entitled to larger credits for board, &c. The evidence seems to support the report, and it would serve no useful purpose to give it in detail. These exceptions were overruled, the report confirmed, and a decree rendered and execution ordered against respondents, for the amount stated in the report of the register.

At the same term Sprott filed a petition, asking that the decree be modified, so that execution should be first issued against May, on the ground that he had received the money and was primarily liable, and such a course would prevent litigation between them. This modification was granted. May alone appeals, and he here assigns the decree overruling the demurrer, the decree granting relief, the overruling of the exceptions to the register's report, the final decree, and the order modifying that decree.

THOMAS B. WETMORE, for appellant.—The decree of 1857, in the settlement then made was had without a guardian *ad litem*. True one was appointed, but the record fails to show that he accepted the trust. If valid and binding on the sureties, it should have been sued on at law, and the demurrer to the bill should have been sustained. If it is invalid, it should not be made evidence against appellant. The evidence shows that the guardian received the Confederate money in good faith, and neither she nor her sureties are liable because the results of the war rendered it worthless.—See *Waring v. Lewis*, 53 Ala. 617, and authorities there cited.

The reformation of the decree of the chancellor, on the petition of Sprott was certainly erroneous. The relief thus granted could not be obtained on petition; but must be sought by cross-bill.—Daniel's Ch. Pr. 1743, and cases in note thereto.

SNEDECOR & COCKRELL, *contra*.—The bill was filed by a ward, on attaining majority, against the sureties of her deceased guardian, to obtain a settlement of her guardianship. The bill plainly alleges, and the proof fully shows, the appointment of the guardian; her receipt of the money; her failure to make final settlement; her death in 1865, leav-

[May v. Duke.]

ing no assets and no personal representative. As to the equity of such a bill, see 26 Ala. 53; 20 Ala. 477; 16 Ala. 494; Rev. Code, §§ 2324, 2325. The testimony also clearly shows, that the loan of the ward's money to May was made without any security—was unauthorized and in the very teeth of the statute. The unsecured note never became the property of the ward, and the principle, that payment of Confederate money, received in good faith by the guardian, do not constitute a *devastavit*, or *conversion*, has no application. See, as to ownership of note, 29 Ala. 410.

BRICKELL, C. J.—The settlement made by the guardian in 1857, was a partial or annual, and not a final settlement. The decree rendered would not have authorized the issue of an execution, nor supported an appeal. The only effect of it was as evidence of the state of the guardian's accounts at the time. It was *prima facie* evidence, (if regularly made), that the guardian was not then chargeable with any greater sum of money, than was charged against her, and was entitled to all the credits embraced in the account. On final settlement its correctness was disputable, and it would have been competent for either guardian or ward to have shown its incorrectness in any respect. It was not a bar to the present bill, filed by the ward after her majority, to compel a settlement of the guardianship.

A settlement of a guardianship, partial or final, is irregular, unless the infant ward is represented by a guardian *ad litem*. But of the irregularity, neither the guardian nor his sureties can take advantage. As to them the settlement is as binding and conclusive, as it would have been, if the guardian, who is bound to conduct the settlement regularly, had not proceeded until there was an appointment and appearance by a guardian *ad litem.*—*Hutton v. Williams*, 60 Ala. 107; *Lewis v. Alred*, 57 Ala. ——.

It is questionable whether in the absence of statutes authorizing it, a guardian had authority to loan the moneys of his ward on personal security merely. Whether he had or not, it is certain, that if he made a loan without any other security than the personal obligation of the borrower, he incurred a liability to the ward for the money loaned, though the borrower was of undoubted credit and solvency.—*Lee v. Lee*, 55 Ala. 590. The statutes expressly declare that "he must, if practicable, lend out all surplus money of the ward on bond and mortgage, or on good personal security."—Code of 1876, § 2773. Therefore, when the guardian, without

taking security of any kind, loaned the money of the ward, a *devastavit* was committed, rendering her and her sureties liable. From this liability she could not be discharged by a subsequent collection of the debt from the borrower. It was within the election of the ward to treat the original loan as a conversion of the assets, or to ratify it as a proper administration. Of the right of election, she could not be deprived by the act of the guardian. The only Confederate treasury-notes received by the guardian were received on this unauthorized loan, and they were not assets of the ward's estate. *Walls v. Grigsby*, 42 Ala. 473. While we have no inclination to depart from our repeated decisions, that a trustee who in good faith, and in the exercise of reasonable diligence, received Confederate treasury-notes, in satisfaction of debts due him in his representative capacity, while they were the circulating medium, and usually employed in the payment of debts, and the transaction of business, is not liable for a *devastavit*, merely because they were rendered worthless by the results of the war ; they can not be, and have not been extended so far, that the trustee will be exonerated from liability for a conversion, by receiving them from a borrower to whom he had made an unauthorized loan of trust moneys. The conversion involves him in liability, from which he can not be relieved until satisfaction is made to the *cestui que trust*. The debt contracted by the borrower is his individual property, unless the *cestui que trust* elects to treat it as assets, and when the trustee collects it, in the absence of an election by the *cestui que trust*, it is his own debt he collects. While there is nothing in the pleadings and evidence, which can raise a doubt as to the good faith of the guardian, and of the borrower from her, good faith alone will not excuse. Good faith and reasonable diligence, must be united with the observance of duty and authority as declared by law. If these are violated, however just and pure may be the intention, and however discreet the act, a liability results for all losses which may ensue.

A guardian is entitled to a credit only for moneys actually expended for the ward, or for necessaries he may actually supply. The *onus* of proof is upon him, and no credit can be allowed him, whether it be for money expended, or necessaries supplied, unless the evidence is of that character, which would support an action at law, if the guardian was suing the ward, in an action *ex contractu.*—*Hutton v. Williams, supra*, and authorities cited. Applying this principle to the exceptions to the report of the register, they were properly overruled.

But in decreeing that in the first instance execution should issue against the appellant, rendering him primarily liable, and relieving his co-surety from the common burthen imposed by the bond, the chancellor erred.   The rule of practice is, that a defendant to obtain relief against a co-defendant. must resort to a cross-bill.—3 Dan. Ch. Pr. 1743.   If an equity exists which compels the appellant to bear the burthen of the common obligation, in ease and in exoneration of his co-surety, it is not the office of a petition, but of a cross-bill, to present it for the judgment of the court.   In this respect, the decree of the chancellor must be reversed and annulled, but in all others it is affirmed.